Argued and submitted December 10, 2008, decision of Court of Appeals reversed;
order of Board of Parole and Post-Prison Supervision reversed, and case remanded
to Board of Parole and Post-Prison Supervision for further proceedings
March 5, 2009

THOMAS EDWARD O'HARA,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A130572; SC S055839)

203 P3d 213

Kristin A. Carveth, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem.

Jeremy Rice, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

**BALMER, J.**

This administrative case raises a small but important issue respecting the procedures by which a party before an administrative agency can obtain witnesses to testify on his behalf. The Board of Parole and Post-Prison Supervision (board) denied petitioner Thomas O'Hara's request to present the testimony of eyewitnesses at a hearing on charges that he had violated the conditions of his post-prison supervision, concluding that the testimony would not be relevant. The board found that petitioner had violated the conditions and imposed a sanction of 45 days in jail. The Court of Appeals affirmed without opinion. *O'Hara v. Board of Parole*, 218 Or App 229, 179 P3d 752 (2008). We allowed review and now reverse.

The facts pertinent to the issue before us are not disputed. Petitioner was convicted of various crimes and sentenced to prison. After his release from prison, he was placed on post-prison supervision status. His supervision conditions, among other things, required him to answer his parole officer's questions truthfully and prohibited him from associating with known drug users and from possessing weapons. On March 9, 2005, petitioner's parole officer, Tyler Frederickson, apparently accompanied by two other parole officers,[1] visited petitioner at home. One of the officers asked petitioner if there were "any violations" in his residence. Petitioner responded that there was alcohol on the premises; however, petitioner was not prohibited from having alcohol. Petitioner consented to a search of his residence. Petitioner's girlfriend, Carey Bailey, was present. After an inquiry, the parole officers discovered that there was an outstanding warrant for Bailey's arrest. The parole officers called for assistance and then awaited the arrival of a Salem Police Officer. The officers searched the house and found petitioner's friend, Eddie Cortez, hiding in petitioner's closet. Cortez was on post-prison supervision status for rape and drug offenses and

---

[1] From the record, it is clear that at least two parole officers—Frederickson and another officer—arrived at petitioner's house together. It is also clear that, later in the evening, a total of three parole officers were present at petitioner's house, Frederickson and two others. It is not clear, however, if the third officer arrived at the same time as the first two or if he arrived later, after Frederickson had called for assistance.

also was wanted for a parole violation. The officers searched Cortez and found marijuana. They also searched petitioner and found a folding knife. Petitioner was charged with violating the conditions of his post-prison supervision status by associating with a known drug user, possessing a weapon, failing to answer all questions truthfully, and failing to report for sex offender treatment.

On March 15, 2005, a hearings officer met with petitioner to review his rights in the parole violation process. *See* ORS 144.343(3) (describing manner in which notice of rights is given before parole-violation proceeding).[2] Petitioner filled out the appropriate sections of a notice-of-rights form, indicating that he wanted a hearing. He supplied the names or identities of six witnesses who he wanted to testify at the hearing: Bailey, Cortez, Frederickson, the two parole officers, and the Salem Police Officer who also was present at petitioner's arrest.

The hearings officer confirmed that petitioner had reviewed and signed the notice-of-rights form. She acknowledged that petitioner wished to call the six persons who were present at petitioner's home on March 9, 2005, and stated that she planned to request the presence of parole officer Frederickson, but she rejected petitioner's request to call as witnesses the other parole officers and the police officer. At that point, petitioner interrupted and said, "But essentially the people who were there at the time, I can't call as witnesses is what you're telling me." The hearings officer responded that parole officer Frederickson would be there to "represent what happened." Petitioner countered, "So the other people who were there who may contradict him when questions are [raised], I'm not going to be allowed to call [them]?" She responded, "No. It's not relevant to the—the allegations." Petitioner insisted, "Actually—actually it is relevant." The hearings officer assured petitioner that she would explain to him why the witnesses were not relevant.

---

[2] Petitioner was found to be in violation of the condition of his post-prison supervision, rather than in violation of parole conditions. However, for purposes of this opinion, the same law applies to post-prison supervision and parole proceedings. *See* ORS 144.108(2) (requiring hearing that complies with ORS 144.343 and 144.347). For ease of reference, we refer to the "parole violation process" rather than the "post-prison supervision violation process."

Finally, when asked if he had anything to add to the record, petitioner stated, "Just that I'll object to any denial of any witnesses." From that colloquy, it appears that the hearings officer also rejected petitioner's request to call Bailey and Cortez.[3]

On March 28, 2005, a violation hearing was conducted before the same hearings officer who had conducted petitioner's notice-of-rights hearing. The hearings officer noted petitioner's previous request to call Bailey, Cortez, and the officers (other than Frederickson) as witnesses and again denied the request, concluding that the testimony of those witnesses was not relevant to the issues to be examined. Petitioner objected to the denial of his request, asserting that "each one would give testimony as to what they saw at that time for their part in the actions that Mr. Frederickson has deemed to be violations." Petitioner further indicated that he would address each matter as it came up and "tell what each one of those witnesses would have presented and the questions that I would have asked them, and what they may have stated at that time[.]" Later in the hearing, petitioner stated that Bailey, if she had been allowed to testify, would have stated that she never had told petitioner that she had any outstanding warrants. Petitioner did not, however, make any particular statements about the anticipated content of Cortez's testimony.

Petitioner also testified on his own behalf. He stated that the knife found on his person was used in his work cleaning carpets, in preparing food, and in carving wood.[4] He claimed that he did not know that Cortez was wanted for a parole violation or that Cortez possessed marijuana. He also stated that he did not know that Cortez had a conviction for a drug offense, although he thought that Cortez was a sex offender. Petitioner admitted that he knew that Cortez was present in the home, but did not want to "snitch" on him.[5]

---

[3] Indeed, at petitioner's subsequent parole-revocation hearing, the hearings officer stated that she had already denied petitioner's request to call Bailey, Cortez, and the other officers.

[4] The parole officer indicated that permission to use the knife was limited to work and concluded that petitioner's possession of the knife at home was a violation.

[5] Petitioner stated at the hearing, "I may not have said, 'He's in the closet,' but I didn't have a problem with them searching the closet, and told them so."

The hearings officer found that petitioner had possessed a weapon and had not answered his parole officer's questions truthfully when he failed to disclose that he was in violation of several conditions.[6] The hearings officer recommended a 45-day jail sentence as a sanction. The board adopted the hearings officer's findings and recommendation. Petitioner timely sought administrative review of the sanction order, and the board denied relief in an Administrative Review Response. Petitioner sought judicial review, and, as noted, the Court of Appeals affirmed without opinion. Petitioner then sought review in this court, which we allowed.

Orders of the board are subject to judicial review under ORS 144.335(1), and appellate courts review those orders under the standards set out in ORS 183.482(8). *See* ORS 144.335(3) (so stating). ORS 183.482(8)(b)(C) provides that the court shall remand an order to the agency issuing the order if the agency action was "in violation of a constitutional or statutory provision."

■ Before turning to petitioner's substantive arguments regarding whether petitioner's proffered witnesses likely would have provided relevant information and whether the board was therefore required to issue subpoenas for those witnesses, we address whether petitioner adequately preserved those issues in the parole revocation proceeding. The board argues that the dispute about petitioner's proffered witnesses was not preserved because petitioner did not make an offer of proof at the hearing as to the testimony that the witnesses would have given. In the alternative, the board asserts that any offer of proof by petitioner was inadequate. Petitioner maintains that he adequately informed the hearings officer about the individuals that he wanted to call as witnesses and why he wanted to call them. Assuming, without deciding, that an unrepresented party in an administrative hearing must make something analogous to an offer of proof, for the reasons set out below, we hold that what petitioner did here was sufficient.

---

[6] The charge for the failure to tell the truth was based on not disclosing the knife when asked if he had "any violations" and failing to indicate Cortez's presence in the house.

■     Rules of preservation in court proceedings serve several purposes, including encouraging the parties to sharpen the issues and to present them fully and fairly to the trial court in the first instance, so that the trial court has an opportunity to make an informed ruling and develop an adequate record and the opposing party and the reviewing court are not taken by surprise later. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal."); *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988) ("The purpose of this rule [requiring an offer of proof] is to assure that appellate courts are able to determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case."); ORAP 5.45(1) (claimed error must be preserved in lower court). In making the determination that an issue has been preserved, "an appellate court must view the facts in light of the purposes of fairness and efficiency that underlie the requirement." *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998).

Petitioner's statements at the notice-of-rights hearing and the subsequent violation hearing—whether characterized as an "offer of proof" or otherwise—were sufficient to satisfy the purposes that the preservation requirement serves, namely, providing the hearings officer with sufficient information to make an informed decision as to the admissibility of the proffered testimony and providing procedural fairness to the opposing party. As discussed, petitioner requested specific witnesses, the request was denied, and petitioner attempted to explain the relevance of the proffered testimony based on his limited knowledge of what the witnesses might say. That information was sufficient as to Bailey, for example, because Bailey's anticipated testimony, as petitioner described it, would have impeached Frederickson's statements about petitioner's knowledge of Bailey's outstanding warrants and because petitioner implied that her testimony otherwise would have supported his version of the facts. Although petitioner did not specifically recount the testimony that Cortez would have given, he stated that Cortez was present at the house during the events in question, and it

is apparent from petitioner's request to call him as a witness that he thought that Cortez would support petitioner's version of what had occurred and perhaps petitioner's asserted lack of knowledge about Cortez's drug conviction. Petitioner's objections adequately informed the hearings officer of the relevance of the proffered witnesses' testimony, given that the hearings officer knew that the witnesses were present during the parole officer's visit to petitioner's apartment and that petitioner had maintained that the witnesses would present testimony that "dealt specifically with each violation and their part in that."

Moreover, the board cannot claim surprise that petitioner would request those witnesses to testify. Petitioner first requested the attendance of his witnesses six days after he was taken into custody, when the hearings officer met with him to review his notice of rights. Thus, the board had notice of whom petitioner wished to call as witnesses before the parole revocation hearing.

The board contends that petitioner failed to make a formal offer of proof as to the anticipated testimony of the witnesses who he wanted to testify on his behalf. That might be an appropriate objection in formal litigation. An informal administrative hearing, however, does not require the same level of formality as litigation in a court of law. The parole revocation proceeding at issue here is conducted in accordance with a statute and administrative rules, rather than the Oregon Rules of Civil Procedure, *see generally* ORS 144.343 (describing procedure for parole-revocation hearing), and the offender frequently is not represented by counsel. *See* ORS 144.343(3)(f), (4)(d) (describing requirements for right to court-appointed counsel). No rule or case law applicable to this proceeding requires an offer of proof of the kind one encounters in litigation in court, and, indeed, such a requirement might be difficult to administer. In civil or criminal litigation, an attorney would have an opportunity to investigate and speak with potential witnesses and could be expected to provide an offer of proof if the proffered evidence were rejected. Here, petitioner was taken into custody at the same time that Bailey and Cortez were arrested. There is no indication that petitioner had the ability to communicate with

those witnesses or arrange for their participation at his hearing without the assistance of the hearings officer or board. Neither is there any indication that the board or the hearings officer offered petitioner any such assistance—indeed, the record suggests to the contrary.

The board concedes that Cortez was a witness who possessed relevant information, but criticizes petitioner's failure to preserve his arguments for review, because he failed to make an offer of proof with sufficient specificity. It was insufficient, the board argues, for petitioner to tell the hearings officer nothing more than the fact that Cortez was present when the parole officer searched the home and would testify concerning what he saw. The board further argues that petitioner's argument that Bailey's testimony could be used to impeach the parole officer's credibility "is not preserved * * * because he never presented that theory of admissibility to either the hearings officer or the Court of Appeals." There is no requirement, however—in statute, rule, or case law—that a party offer a "theory of admissibility" to support the testimony of an eyewitness to the very events at issue in the informal hearing. The board faults the level of specificity of petitioner's arguments but fails to address the fact that he made straightforward and accurate statements about the relevance of the testimony of particular witnesses who, the board concedes, were eyewitnesses to the events at issue.

Petitioner sufficiently preserved his arguments for review by providing enough information to demonstrate that the witnesses who he wanted to call likely had some knowledge of relevant facts. The hearings officer responded by asserting that the requested witnesses knew nothing that was relevant—a blanket assertion that even the board now recognizes was too sweeping. In the face of the hearings officer's unwavering resistance to petitioner's request, petitioner did not have to do more to preserve the relevance issue for review.

■   We turn to the issue whether petitioner had a right to present the proffered testimony. Even prior to the hearing, petitioner was entitled to be informed of, among other rights, his "right to present * * * persons with relevant information at the hearing unless it has been determined that informants

would be subject to risk of harm if their identity were disclosed." ORS 144.343(3)(d); *see also* OAR 255-075-0025 (detailing notice-of-rights requirements). At the revocation hearing itself, petitioner had the right "[t]o present evidence on [his] behalf," including "the right to present * * * persons with relevant information regarding the alleged violations[.]" ORS 144.343(4)(a). Similarly, OAR 255-075-0036(3) provides, "The offender may present witnesses who have relevant information[.]" In sum, petitioner had a right to present the witnesses' testimony as long as that testimony was "relevant" to the issues to be resolved in the hearing.

Relevance does not pose a high standard for admissibility. We agree with the parties that whether information is relevant for purposes of the statutes and rules that apply to this proceeding is determined by the same definition of "relevant evidence" that appears in Rule 401 of the Oregon Evidence Code: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Petitioner contends that testimony from Cortez would have been relevant because Cortez was present and because Cortez would have testified about petitioner's knowledge of Cortez's drug history and possession of drugs, which would have provided a defense to the charge that petitioner was associating with a known drug user. Likewise, petitioner asserts that Bailey would have provided testimony about petitioner's knowledge of Cortez's drug possession and Bailey's own outstanding warrants, as well as testimony regarding petitioner's defense that the knife found in his possession was used for work. Given the nature of the allegations against petitioner and the undisputed fact that both witnesses were present at the time of the parole officer's visit, we conclude that those witnesses reasonably could have been expected to provide relevant evidence. Whether or not Bailey and Cortez would have been useful percipient witnesses of the events that transpired when petitioner was arrested—and their testimony regarding those events might have been useful to petitioner—they would have offered some evidence of petitioner's state of mind with respect to two of petitioner's alleged violations of the conditions of post-prison supervision,

associating with known drug users and possessing weapons. The hearings officer and the board erred in concluding that the testimony of Cortez and Bailey would not have been relevant to the issues at the hearing.[7]

■ The state next argues that any error by the board in executing the proffered testimony was harmless. The state contends that, even if Cortez and Bailey had testified as petitioner hoped they would and the hearings officer had credited their testimony, petitioner still would have been found in violation of one or more of his post-prison supervision conditions because that testimony would not have rebutted every fact on which the board based its revocation decision. That argument misses the point. Even assuming that, notwithstanding the testimony of the witnesses that he requested, petitioner would have been found in violation of one or more conditions, the testimony of those witnesses would have been relevant to the sanction imposed. The number of conditions that petitioner violated, the number of instances in which the hearings officer concluded that petitioner had not told the truth to his parole officer, and petitioner's mental state as to the possession of the knife or the status of Cortez and Bailey all would have been relevant to the severity the sanction that the hearings officer imposed.

■ The final issue is whether the board erred in failing to issue subpoenas for petitioner's witnesses. ORS 144.347(1)[8] and OAR 255-075-0036[9] provide for the issuance

---

[7] The hearings officer, of course, like a trial judge, has the authority to exclude even relevant testimony for various reasons, including that the cumulative nature of the evidence substantially outweighs its probative value. *See* OEC 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence.").

[8] ORS 144.347(1) provides:

"Upon request of any party to the hearing provided in ORS 144.343 and upon a proper showing of the general relevance and reasonable scope of the testimony to be offered, the board or its designated representatives shall issue subpoenas requiring the attendance and testimony of witnesses. In any case, the board, on its own motion, may issue subpoenas requiring the attendance and testimony of witnesses."

[9] OAR 255-075-0036(1) provides:

"Offenders shall make their own arrangements for calling and presenting witnesses. However, upon the request of any party to the hearing, and upon a

of subpoenas to require the attendance of witnesses on a "proper" showing of the "relevance and reasonable scope" of the anticipated testimony. If, at the notice-of-rights hearing, petitioner made a sufficient showing of relevance and reasonable scope, the board was obligated to subpoena the witnesses on his behalf. *See* ORS 144.347(1) ("upon a proper showing * * * the board or its designated representatives *shall* issue subpoenas") (emphasis added). Whether subpoenas should have been issued depends on the relevance of the witnesses' testimony and whether that testimony would have been "reasonable [in] scope." We already have concluded that the witnesses would have offered relevant testimony. And nothing in this record indicates that their testimony would not have been reasonable in scope. As described by petitioner, that testimony would have focused on the events in petitioner's home, petitioner's understanding of the permissible scope of his use of the knife, and what petitioner knew about the status of Bailey and Cortez. To the extent that a particular witness may have started to wander too far afield in testifying or to present testimony that was cumulative or redundant, the hearings officer could have stepped in to control the focus of the testimony.

The board argues that petitioner never asked the hearings officer to issue subpoenas. While it is correct that petitioner did not use the term "subpoena," he expressed a clear desire at the notice-of-rights hearing that certain witnesses should be made to appear at his violation hearing. The hearings officer thus was sufficiently apprised of what petitioner wanted, despite the fact that petitioner did not, in so many words, ask that subpoenas be issued. Accordingly, the hearings officer should have issued subpoenas for petitioner's witnesses or explained why petitioner was not entitled to have the witnesses subpoenaed, as is contemplated by ORS 144.347(1).

In denying petitioner's request to call witnesses who petitioner specifically identified and who possessed relevant evidence, without providing a sufficient reason, the board

proper showing of the relevance and reasonable scope of the testimony to be offered, the Sanction Authority or Hearings Officer shall issue subpoenas requiring the attendance and testimony of witnesses. In addition, the Sanction Authority or the Hearings Officer may subpoena documents when relevant."

deprived petitioner of the procedural rights set out in ORS 144.343(4)(a). In failing to issue subpoenas, the board failed to provide petitioner the rights granted by ORS 144.347(1). Although the hearings officer and the board have discretion in the conduct of parole revocation hearings, that discretion must be exercised consistently with statutory requirements. The board failed to adhere to those statutory requirements in this case. The board's order therefore must be reversed, and the case remanded for further proceedings. *See* ORS 183.482(8)(b)(C) (court shall remand to agency when agency's exercise of discretion violates statutory provision). We therefore reverse and remand so that the board may conduct another hearing at which it considers the relevant testimony of petitioner's requested witnesses.

The decision of the Court of Appeals is reversed. The order of the Board of Parole and Post-Prison Supervision is reversed, and the case is remanded to the Board of Parole and Post-Prison Supervision for further proceedings.