Argued and submitted October 29, 2010, affirmed February 16, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD LEE GRAY, JR.,
aka Ronald Lee Gray,
*Defendant-Appellant.*

Multnomah County Circuit Court
080532124; A140711

249 P3d 544

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant shot his sister with a pistol. She survived, and defendant was convicted of multiple offenses, including, as relevant to this appeal, two counts of unlawful use of a weapon, ORS 166.220(1).[1] Defendant raises three assignments of error, the first of which we reject without discussion.[2] In his second assignment of error, defendant argues that the trial court erred in declining to merge his convictions on the two counts of unlawful use of a weapon, one of which alleged a violation of ORS 166.220(1)(a), and the other of which alleged a violation of ORS 166.220(1)(b). Defendant acknowledges that this case is partially controlled by *State v. Crawford*, 215 Or App 544, 171 P3d 974 (2007), *rev den*, 344 Or 280 (2008), but argues that, in light of subsequent developments in the law, *Crawford* should be abandoned. We affirm.

The pertinent facts are few and, in the context of defendant's challenge to the trial court's refusal to merge his convictions, we take the facts in the light most favorable to the state. *State v. Camarena-Velasco*, 207 Or App 19, 21, 139 P3d 979 (2006). Defendant and his sister, R, lived at home with their mother. On the day defendant shot her, R arrived at the home in the afternoon and found that defendant had locked the side door. Defendant was asleep inside the home. R did not have a key and began pounding on the door with her hands and feet. Defendant awoke, retrieved a pistol from

---

[1] That statute provides, in pertinent part:

"A person commits the crime of unlawful use of a weapon if the person:

"(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or

"(b) Intentionally discharges a firearm, blowgun, bow and arrow, crossbow or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge."

[2] In his third assignment of error, defendant argues that the trial court erred when it instructed the jury that they could find him guilty by a nonunanimous verdict. The trial court did not err. *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129 (2008), *rev den*, 345 Or 415, *cert den*, ___ US ___, 130 S Ct 52 (2009).

under his pillow, went to the door, opened it, and shot R in the shoulder.

Defendant was charged by indictment with, among other offenses, two counts of unlawful use of a weapon. The first count, Count Four of the indictment, charged defendant with "unlawfully and intentionally discharg[ing] a firearm within the city limits of the city of Portland, Oregon, at or in the direction of a person within the range of said weapon without having legal authority for such discharge." *See* ORS 166.220(1)(b). The second count, Count Five of the indictment, charged defendant with "unlawfully attempt[ing] to use, carry with intent to use and possess with intent to use unlawfully against another person, a deadly weapon." *See* ORS 166.220(1)(a).

Following his conviction on those two counts, defendant asked the trial court to merge the convictions into a single conviction under ORS 161.067(1).[3] Defendant argued that the two convictions should merge because "the attempt to use a deadly weapon is merely an alternate theory of the intentional discharge within the city limit." According to defendant, "the way that [Count Four is] pled, there is nothing in Count Five that isn't covered in Count Four, because one is a substantial step towards. Just like any attempt might be a lesser included." In reply, the state argued that "there are elements in Count Four * * * that are not pled or required to prove Count Five. Specifically, there's no requirement in Count Five that * * * defendant intentionally discharged a firearm. There's also no proof—required element in Count Five that discharge occurred within the city limits of Portland."

Defendant agreed that Count Four had different elements from Count Five, but nonetheless urged the trial court to merge the convictions because Count Five "doesn't charge anything that's not included in four. * * * I would agree that four clearly has different elements. I'm just arguing that five

---

[3] That statute provides, in pertinent part:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

is akin to a lesser included, because it's the attempt to use a deadly weapon against another person." The trial court queried defendant's counsel on that point:

> "The Court:   So, you're argument is everything that the state would have to prove to establish count five they would also have to prove to establish count four?
>
> "Defense Counsel:   Right.
>
> "* * * * *
>
> "Defense Counsel:   Well, in the sense that any time an attempt is always a lesser included.
>
> "The Court:   Right.
>
> "Defense Counsel:   So, I get that in—to prove five you would not have to prove that the weapon went off.
>
> "The Court:   Right.
>
> "Defense Counsel:   So—but in that sense, like an attempt is a lesser included, it's just covered. By proving five, it's within the pleading of four.
>
> "The Court:   Okay."

The trial court declined to merge defendant's convictions. This appeal followed.

As noted, defendant acknowledges that the issue at hand is partially controlled by our opinion in *Crawford*, where we held that ORS 166.220(1)(a) and (1)(b) are "separate statutory provisions" for purposes of the anti-merger statute. Defendant nevertheless argues that the Supreme Court's subsequent decisions in *State v. White*, 346 Or 275, 211 P3d 248 (2009), and *State v. Parkins*, 346 Or 333, 211 P3d 262 (2010), demonstrate that our analysis of the merger issue in *Crawford* was erroneous. Specifically, defendant argues that *White* and *Parkins* show that "the Supreme Court has rejected the 'separate and distinct legislative concerns' test in favor of the broader one unified legislative objective test." Defendant argues that, when this "broader" test is applied to ORS 166.220(1), it becomes apparent that both subsections of the statute are intended to "prevent the harm that results from the use of weapons against or in the vicinity of other people," and, thus, both subsections address a single,

unified legislative objective and are not separate statutory provisions. It follows, defendant concludes, that our contrary conclusion in *Crawford* was erroneous and defendant's convictions should merge. Defendant also renews his argument that his convictions should merge on the ground that Count Five is a lesser-included offense of Count Four, because "to prove that a person intentionally discharged a firearm at or in the direction of a person, the state must prove that the person attempted to use a deadly weapon against another person."

■　　The state first replies that defendant failed to preserve his argument that ORS 166.220(1)(a) and (1)(b) are not separate statutory provisions. In any event, the state reasons, that question is controlled by our opinion in *Crawford*. With regard to defendant's argument that Count Five is a lesser-included offense of Count Four, the state points out that Count Five included an element—carrying the weapon with intent to use it—that was not included in Count Four, and, thus, the trial court properly declined to merge defendant's convictions.

■　　We disagree with the state's argument that defendant failed to preserve his argument that ORS 166.220(1)(a) and (1)(b) are not separate statutory provisions. As set out above, defendant argued to the trial court that Count Five was simply an "alternate theory" of Count Four. The trial court understood defendant's argument. As the Supreme Court recently emphasized in *O'Hara v. Board of Parole*, 346 Or 41, 47, 203 P3d 213 (2009),

> "[r]ules of preservation in court proceedings serve several purposes, including encouraging the parties to sharpen the issues and to present them fully and fairly to the trial court in the first instance, so that the trial court has an opportunity to make an informed ruling and develop an adequate record and the opposing party and the reviewing court are not taken by surprise later."

Defendant's use of the phrase "alternate theory" was sufficient to alert the trial court to his argument that counts four and five did not allege violations of separate statutory provisions. The phrase "alternate theory" has consistently been used by this court and the Supreme Court in assessing

whether or not separately pleaded violations of statutory subsections should merge following a defendant's convictions. *See, e.g., State v. Barrett,* 331 Or 27, 10 P3d 901 (2000) (holding that aggravating factors embodied in aggravated murder statute were "alternative theories" of committing single crime of aggravated murder); *State v. White,* 217 Or App 214, 175 P3d 504 (2007), *aff'd in part, rev'd in part,* 346 Or 275, 211 P3d 248 (2009) (considering question of whether ORS 164.405(1)(a) and (1)(b) set out alternative theories of second-degree burglary or were two separate statutory provisions under ORS 161.067(1)). Although defendant's argument could have been more robust, his use of the phrase "alternate theory," along with his general argument under ORS 161.067(1), adequately alerted the trial court to the argument that he advances on appeal. As the Supreme Court has cautioned, "problems may arise if the preservation onion is sliced too thinly," *State v. Amaya,* 336 Or 616, 629, 89 P3d 1163 (2004), and the state's argument in this case invites just such a slice. We decline the invitation.

■      The parties' arguments on the merits turn on the continued vitality of our opinion in *Crawford*. In that case, the defendant, who was in the backseat of a car that had pulled up in front of a house, beckoned to the victim and when the victim approached him, began firing a gun in the victim's direction, narrowly missing another person standing nearby. 215 Or App at 546. For that conduct, the defendant was indicted on two counts of unlawful use of a weapon, one count under ORS 166.220(1)(a) and another count under ORS 166.220(1)(b). *Crawford,* 215 Or App at 546. The defendant was convicted and asked the trial court to merge his convictions; the trial court declined to do so. *Id.* After reviewing the controlling analysis set out by the Supreme Court in *State v. Crotsley,* 308 Or 272, 279, 779 P2d 600 (1989), *State v. Kizer,* 308 Or 238, 779 P2d 604 (1989), *Barrett,* and *State v. White,* 341 Or 624, 147 P3d 313 (2006), we affirmed the trial court's decision not to merge the convictions. We reasoned:

> "It is undisputed that defendant's conduct arose from a single criminal episode and that ORS 166.220(1)(a) and (b) contain different elements. ORS 166.220(1)(a) provides that a person commits the crime of unlawful use of a weapon if he or she attempts to use the weapon against

another or carries or possesses the weapon with the intent to use it unlawfully against another. In contrast, subsection (1)(b) applies when the person actually discharges the firearm, and does so either at an individual, a building, a structure, or a vehicle. The question whether subsections (1)(a) and (1)(b) constitute two statutory provisions, that is, whether they address separate and distinct legislative concerns, is a close one. However, we conclude that they do.

"By its terms, subsection (1)(a) is directed toward the risk posed by individuals carrying weapons with the intent to unlawfully use them against a person, whereas subsection (1)(b) is concerned with the actual discharge of a weapon in a manner that creates a risk to people, buildings, or vehicles in urban areas. To be sure * * * the text suggests that the ultimate legislative concern of both subsections is preventing harm to persons; however * * * the structure and legislative history of the statute demonstrates that a more particularized focus is appropriate. First, * * * ORS 166.220(1) is divided into multiple subsections with different elements. *But more importantly*, the history of that statute *demonstrates a legislative intent* to distinguish between the risk of harm to an intended victim of a person who carries a weapon, subsection (1)(a), and the risk of harm to bystanders in drive-by shooting incidents, subsection (1)(b).

"In its early iterations, the statute prohibited only the acts that are now described in subsection (1)(a). *See, e.g.*, Or Laws 1975, ch 700, § 1. Then, in 1991, the legislature enacted subsection (1)(b). In doing so, the legislature intended to enact a law to protect against drive-by shootings that put bystanders at risk. Minutes, Senate Committee on Judiciary, SB 638, Mar 13, 1991; Minutes, House Committee on Judiciary, Apr 24, 1991, Ex I. One person who testified in support of the bill observed that current law (what is now subsection (1)(a)), provided police with little recourse in such shootings, because people who commit drive-by shootings 'may intend to target a house or a vehicle.' Minutes, Senate Committee on Judiciary, Mar 13, 1991. In other words, in drive-by shootings, the shooter need not have a specific human target or victim in mind and may simply intend to discharge a firearm. But, in doing so in an urban area, the shooter creates a risk that the bullets may strike cars, houses, businesses, and their occupants.

"In short, ORS 166.620(1)(b) was enacted to address risks not adequately covered by the existing law. Those additional risks were implicated in this case; not only did defendant possess a gun with the intent to use it against a particular victim, but he also shot at a vehicle and a house. Although the two statutory provisions fall broadly within the same statute, they are set out in different subsections, involve different elements, and address separate and distinct legislative concerns."

215 Or App at 554-56 (emphasis added).

As is apparent from the above-quoted portion of our opinion in *Crawford*, our inquiry into whether ORS 166.220(1)(a) and (1)(b) should merge was not a mechanical exercise. Rather than relying solely on what defendant characterizes as "the now rejected test of 'separate and distinct legislative concerns,' " set forth in *Crotsley*, our inquiry was consistent with the Supreme Court's subsequent case law. In *White*, the Supreme Court set out the scope of the inquiry into whether statutory subsections are "separate statutory provisions":

"First, as discussed above and as articulated by this court in *White* and *Barrett*, the appropriate inquiry is *whether the legislature intended* to create a single crime or two crimes; the fact that a statute addresses two legislative concerns may be a useful guide when analyzing the legislature's intent, but it is not dispositive. Second, every statutory section that 'requires proof of an element that the others do not,' ORS 161.067(1), necessarily involves a distinct legislative concern—otherwise there would be no need for the additional element. And, we know from *Crotsley*, 308 Or at 278 and *Barrett*, 331 Or at 32, that whether an additional element must be proved and whether there are 'two or more statutory provisions' are separate inquiries under ORS 161.067(1). As a result, we cannot focus solely on the fact that the legislature may have had separate reasons for enacting each section of a statute. *Instead, we view the statute as a whole, looking to the text, context, and, when appropriate, legislative history of the statute. That analysis includes consideration of whether the sections, although addressing different concerns, also may address, on a more general level, one unified legislative objective.*"

346 Or at 283-84 (emphasis added). The court relied on that passage in setting out its analysis of the defendant's merger claim in *Parkins*. *See* 346 Or at 348 ("To resolve that issue, we begin with our recent decision in *State v. White*, in which we synthesized this court's prior merger cases discussing the phrase 'statutory provisions.' ").

Our analysis in *Crawford* was consistent with the court's subsequent elucidation of the proper analysis under ORS 161.067(1)(b). As in *White*, our analysis in *Crawford* considered not only the structure of the statute, but also the intent of the statute as reflected in the legislative history and particular wording of each provision of ORS 166.220(1)(a) and (1)(b). And as *White* counseled, our inquiry in *Crawford* began with a consideration of the proper level of abstraction from which it was appropriate to ascertain the reasons the legislature enacted the statute. *See Crawford*, 215 Or App at 553-54 (discussing levels of abstraction). Accordingly, we decline defendant's invitation to revisit *Crawford*.

■ We turn to defendant's second argument, that Count Five is a lesser-included offense of Count Four, because, in defendant's view, "to prove that a person intentionally discharged a firearm at or in the direction of a person, the state must prove that the person attempted to use a deadly weapon against another person." The state argues that Count Five included an element not included in Count Four; that is, Count Five required the jury to find that defendant had carried a weapon with the intent to use it, whereas Count Four only required the jury to find that defendant had intentionally discharged the firearm. Unlike in *Crawford*, where the parties had not disputed whether offenses charged under ORS 166.220(1)(a) and (1)(b), as pleaded, each contained an element that the other did not, defendant's argument in this case implicates the second inquiry under ORS 167.067(1): whether "each statutory provision * * * requires proof of an element that the other does not." *State v. Blake*, 348 Or 95, 98, 228 P3d 560 (2010). As the court explained in *Blake*, "if one offense contains X elements, and another offense contains X + 1 elements, the former offense does not contain an element that is not also found in the latter offense. In that situation, under ORS 161.067(1), there is only one separately punishable offense." *Id.* at 99.

■ Count Four of the indictment charged defendant, in the words of the statute, with "unlawfully and intentionally discharg[ing] a firearm within the city limits of the city of Portland, Oregon, at or in the direction of a person within the range of said weapon without having legal authority for such discharge." Thus, to convict defendant on Count Four, the state was required to prove that defendant:

1. Unlawfully and intentionally discharged a firearm;

2. Within the city limits of Portland, Oregon;

3. At or in the direction of a person within the range of said weapon;

4. Without having legal authority for such discharge.

Count Five of the indictment charged defendant, in the words of the statute, with "unlawfully attempt[ing] to use, carry with intent to use and possess with intent to use unlawfully against another person, a deadly weapon." Thus, to convict defendant on Count Five, the state was required to prove that defendant:

1. Unlawfully attempted to use;

2. Carried or possessed with intent to use unlawfully;

3. Against another person, a deadly weapon.[4]

Applying the analysis in *Blake*, we conclude that each count of the indictment required proof of an element that the other did not. Count Four required the state to prove that defendant had (a) unlawfully discharged a firearm, (b) within the city limits of Portland, Oregon, neither of

---

[4] We have set out the elements as they are provided in ORS 166.220, because, in conducting our inquiry under ORS 167.067(1), only the statutory elements of the offenses are compared; if different, the facts as alleged in the indictment or found by the factfinder are not relevant. *State v. Walraven*, 214 Or App 645, 653-54, 167 P3d 1003 (2007), *rev den*, 344 Or 280 (2008); *State v. Sumerlin*, 139 Or App 579, 584, 913 P2d 340 (1996). However, when a statute contains alternative forms of a single crime (as, for example, unlawful use of a weapon, which can be committed either by (1) carrying or possessing a dangerous weapon or by (2) attempting to use one), we will look to the indictment to determine which form is charged, and we use the elements of the charged version in the merger analysis. *State v. Cufaude*, 239 Or App 188, 192-93, 244 P3d 382 (2010). This case does not fall within the exception we identified in *Cufaude* because Counts Four and Five here were based on separate statutory subsections, and not on the alternative theories of unlawful use of a weapon contained in ORS 166.220(1)(a) at issue in *Cufaude*.

which had to be proved in order to convict defendant on Count Five. Likewise, Count Five required the state to prove that defendant carried or possessed the firearm with the intent to use it unlawfully against another person, an element not required to convict defendant on Count Four. Although Count Four did require the state to prove that defendant intentionally discharged the firearm "at or in the direction of a person within the range of said weapon without having legal authority for such discharge," Count Five required defendant to carry or possess the firearm with the intent to use it unlawfully with regard to *"another* person," not any person within the range of the firearm. Moreover, as the state points out, a defendant need not "carry" a firearm in order to unlawfully discharge it, as, for example, when a defendant rigs a gun to fire in his absence. Accordingly, Counts Four and Five of the indictment each required proof of an element that the other did not. The trial court did not err in declining defendant's request to merge his convictions.

Affirmed.