175 P.3d 504 (2007)
217 Or. App. 214
STATE of Oregon, Plaintiff-Respondent,
v.
Ricky Lashawn WHITE, aka Ricky Leshawn Booker, aka Ricky Leshawn White, aka Jermaine Marcell, Defendant-Appellant.
041136028; A128491.
Court of Appeals of Oregon.
Argued and Submitted May 30, 2007.
Decided December 26, 2007.
*505 Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.
Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Before LANDAU, Presiding Judge, and SCHUMAN and ORTEGA, Judges.
LANDAU, P.J.
Defendant appeals a judgment of conviction for two counts of second-degree robbery, ORS 164.405, arising out of an episode in which defendant, while shoplifting with another person, threatened one of the store's employees by representing that he had a weapon. Defendant assigns error to the sentencing court's failure to merge those convictions and to the court's use of his juvenile record in determining his sentence. We affirm.
The relevant facts are undisputed. Fender, a loss prevention employee at the Hollywood West Fred Meyer in Portland, saw Sims, who was with defendant, select a watch from a display and remove its packaging. Neither Sims nor defendant paid for the watch. After requesting back-up from other loss prevention employees, Fender followed Sims and defendant as they left the store with the watch. Fender approached Sims, who had the watch in his hand, and inquired about the unpaid merchandise. Sims told Fender that he would stab him if he touched him. Boyce, another loss prevention employee, approached defendant and told him that the store does not apprehend shoplifting accomplices and that he should leave. Defendant *506 did not leave the scene. Around that time, several other loss prevention employees also approached Sims and defendant. Sims continued to threaten the group with the use of a weapon, although neither Sims nor defendant ever produced a weapon. Fender called 9-1-1.
The group of employees followed Sims and defendant into the parking lot. Boyce followed defendant as he moved slightly away from the group and placed his sweatshirt on top of a parked car. When Boyce took defendant's sweatshirt off of the car, defendant took the sweatshirt back and told Boyce not to touch it. While Boyce and defendant were among the parked cars, defendant told Boyce that he would stab Boyce if he touched him.
The car on which defendant had placed his sweatshirt pulled up next to Sims, and Sims, who was still holding the watch, got into the car. The car drove away, leaving defendant behind. The employees continued to follow defendant to the edge of the parking lot. As defendant left the parking lot, Officer Helzer, who was responding to Fender's 9-1-1 call, arrested defendant for robbery. Helzer conducted a search of defendant incident to that arrest and found no weapon.
After a jury trial, defendant was convicted of two counts of second-degree robbery, both on the basis of his conduct toward Boyce. One count charged defendant with violating ORS 164.405(1)(a), which elevates third-degree robbery to second-degree robbery if the person "[r]epresents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon." The other count charged defendant with violating ORS 164.405(1)(b), which elevates third-degree robbery to second-degree robbery if the person "[i]s aided by another person actually present."
At sentencing, defendant argued that those convictions should merge because they were based on the same criminal episode with respect to a single victim. The prosecutor responded that the two convictions should not merge because each was based on a paragraph of the statute that requires proof of an element that the other paragraph does not. The sentencing court entered separate convictions.
On appeal, defendant argues that the court erred in not merging his convictions. According to defendant, merger is required for essentially two reasons. First, he argues, merger is required because the two convictions arose out of a single criminal episode and involved only one victim. Second, he argues, even if those facts alone do not suffice, merger still is required because the two convictions are based on a statute that sets forth only a single offense and alternative theories by which that single offense may be established.
We begin by setting forth the text of the relevant statutes. Oregon's second-degree robbery statute, ORS 164.405, provides:
"(1) A person commits the crime of robbery in the second degree if the person violates [the third-degree robbery statute] and the person:
"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or
"(b) Is aided by another person actually present.
"(2) Robbery in the second degree is a Class B felony."
As pertinent to this case, Oregon's so-called "anti-merger" statute, ORS 161.067, provides, in part:
"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."
A court will uphold a defendant's separate convictions if the following conditions are met: (1) the defendant engaged in acts that involve "the same conduct or criminal episode," (2) the defendant's acts violated "two or more statutory provisions," and (3) each statutory provision requires "proof of an element that the others do not." See State v. Crotsley, 308 Or. 272, 278, 779 P.2d 600 (1989) (identifying those three questions as the appropriate analysis for determining the *507 validity of separate convictions under the anti-merger statute).
When all of those conditions are met, ORS 161.067(1) authorizes separate convictions, even when the convictions arise out of a single episode and involve only one victim. See, e.g., State v. Johnson, 174 Or.App. 27, 29, 32, 25 P.3d 353 (2001), rev. den., 334 Or. 492, 52 P.3d 1057 (2002) (upholding separate convictions for first-degree robbery despite the fact that the conduct constituted a single criminal episode against a single victim). We therefore reject defendant's contention that his convictions merge on that basis alone and now turn to whether the conditions that would preclude merger are met in this case.
The parties do not dispute that defendant engaged in a single criminal episode. Nor do the parties dispute that ORS 164.405(1)(a) and (b) contain different elements. However, the parties do dispute whether defendant's acts violated "two or more statutory provisions." Defendant argues that the legislature intended ORS 164.405(1)(a) and (b) to be merely alternative theories of aggravation upon which a defendant may be charged with the single crime of second-degree robbery. At oral argument, the state argued that the legislature intended that the behavior proscribed by each paragraph to be a separately punishable offense because each paragraph addresses a different legislative concern.
Our disposition of the parties' arguments is aided by a number of appellate court decisions interpreting ORS 161.067(1). In Crotsley, the Supreme Court construed the phrase "two or more statutory provisions," appearing in the now-repealed counterpart to ORS 161.067(1), to include prohibitions that address "separate and distinct legislative concerns." 308 Or. at 278, 779 P.2d 600. In that case, the court upheld multiple convictions arising out of a single sexual assault of the 14-year-old victim: first-degree rape and sodomy because the defendant used force, as well as third-degree rape and sodomy because the victim was under 16. Id. at 275, 280, 779 P.2d 600. The defendant argued that third-degree rape and sodomy were merely lesser-included offenses of first-degree rape and sodomy. Id. at 275, 779 P.2d 600. The court determined that the first-degree and third-degree offense statutes address separate and distinct legislative concernsnamely, forced sexual conduct against any woman and sexual conduct against a particular subset of women based on their ageand therefore rejected the defendant's argument that his convictions merge. Id. at 279, 280, 779 P.2d 600.
In contrast, on the same day, the Supreme Court decided State v. Kizer, 308 Or. 238, 244, 779 P.2d 604 (1989), in which the court held that two convictions merged. In Kizer, the defendant was convicted of two separate counts of forgery, one count for "making" a forged instrument under one paragraph of the statute and the other count for "uttering" the same forged instrument under the other paragraph. Id. at 240, 779 P.2d 604. The court construed the term "statutory provision" to mean any provision that defines a "single crime," regardless of the provision's "visual form." After reviewing the official legislative commentary to the forgery statute, the court determined that, despite the use of different paragraphs as its "visual form," the legislature intended the forgery statute and all of its paragraphs to define the single crime of forgery. Id. at 243, 779 P.2d 604. Because the legislature did not intend the paragraphs to define separate crimes, the court held that the defendant's convictions merged because he did not violate separate statutory provisions. Id. at 243, 244, 779 P.2d 604.
More recently, in State v. Barrett, 331 Or. 27, 31, 10 P.3d 901 (2000), the Supreme Court applied the prohibition against merger of convictions involving "two or more statutory provisions" in the context of the aggravated murder statute. In that case, the court reversed the defendant's multiple convictions for aggravated murder based on various aggravating circumstances that existed during the murder of one victim. Id. To determine whether the various aggravating circumstances constitute separate statutory provisions, thereby precluding merger, the court consideredas required by Crotsleywhether they addressed separate and distinct legislative concerns. Id. at 36, 10 P.3d 901. Based on an analysis of the text of the aggravated *508 murder statute, the court concluded that the legislature intended the listed aggravating circumstances to be aspects of the single crime of aggravated murder-that they merely constitute different theories by which the prosecution may prove the element of "aggravation." Id.
The Supreme Court's most recent merger case is State v. White, 341 Or. 624, 147 P.3d 313 (2006). In that case, the court reversed the defendant's separate burglary convictions that resulted from a single unlawful entry; the multiple convictions had been based on the fact that the defendant had intended to commit two separate crimes when he committed the single unlawful entry. Id. at 640-41, 147 P.3d 313. In reversing the defendant's convictions, the court followed the approach taken in Barrett to ascertain whether the legislature intended that the conduct at issue constitutes a violation of "two or more statutory provisions." Again, that approach requires a court to "determine if the legislature intended to define a single crime or [multiple] separate crimes when it enacted" the relevant offense statute. Id. at 638-39, 147 P.3d 313. To make that determination, a court first looks at the plausible meanings of the text of the offense statute. If more than one plausible meaning exists, it is appropriate for a court to resort to legislative history to resolve the ambiguity. Id. at 639, 147 P.3d 313. Applying that approach in White, the court determined that, because the burglary statute refers to "intent to commit a crime," employing the indefinite article, the words of the statute express a clear intent of the legislature that any crime will suffice to prove burglary but that the nature of the crime is irrelevant. Consequently, the court concluded that the legislature intended that a burglar who has the intent to commit more than one crime upon entry commits the single crime of burglary and therefore violates only one "statutory provision." Id. at 640, 147 P.3d 313.
This court has also applied ORS 161.067(1). In particular, we upheld separate convictions for first-degree robbery in State v. Nevarez, 168 Or.App. 325, 330, 5 P.3d 1200 (2000). The defendant in that case was convicted of violating two of the three paragraphs of the first-degree robbery statuteone that prohibits attempts to cause serious physical injury during the course of the robbery and another that prohibits the use of a dangerous weapon. Id. at 327, 5 P.3d 1200. We examined the text of the paragraphs and determined that prohibiting attempts to cause serious physical injury addresses only physical harm, whereas the circumstance addressed in the other paragraph "is not so limited." Instead, prohibiting the use of a dangerous weapon, while concerned with physical harm, also addresses psychological effects including the victim's heightened terror. Id. at 329-30, 5 P.3d 1200. We held that, because the paragraphs address overlapping but not identical legislative concerns, they define two separate crimes and constitute separate "statutory provisions" for the purposes of ORS 161.067(1). Id. at 330, 5 P.3d 1200.
In Johnson, we compared a different combination of two of the three paragraphs of the first-degree robbery statute. 174 Or. App. at 31-32, 25 P.3d 353. The defendant in that case was convicted of two counts of first-degree robberyone for using or attempting to use a dangerous weapon and the other for being armed with a deadly weapon. Id. at 29, 25 P.3d 353. As we did in Nevarez, we examined the text of the paragraphs at issue and concluded that they addressed different risks and harms. Although both paragraphs address psychological effects on the victim, prohibiting the use or attempted use of a dangerous weapon also addresses physical harm. Id. at 31-32, 25 P.3d 353. As a result, we upheld the defendant's separate convictions for multiple counts of first-degree robbery. Id. at 32, 25 P.3d 353.
We also applied the "separate and distinct legislative concerns" analysis in State v. Barnes, 209 Or.App. 332, 338-39, 147 P.3d 936 (2006), rev. den., 342 Or. 256, 151 P.3d 930 (2007). In that case, the defendant argued, among other things, that his conviction for harassment should merge into his conviction for first-degree sexual abuse based upon the same conduct against the same victim. Id. at 335, 147 P.3d 936. To determine whether the harassment and first-degree sexual abuse statutes constitute "separate statutory violations" for the purposes of ORS *509 161.067(1), we again assessed whether the statutes addressed different legislative concerns. Id. at 335, 338-39, 147 P.3d 936. We concluded that they did and upheld the defendant's separate convictions. Id. at 339, 147 P.3d 936.
However, we determined that ORS 161.067(1) did not preclude the merger of separate convictions in State v. Luers, 211 Or.App. 34, 64, 153 P.3d 688, adh'd to as modified on recons., 213 Or.App. 389, 160 P.3d 1013 (2007). In that case, we concluded that the defendant's two convictions for first-degree arsonone for recklessly placing another person in danger of physical injury and the other for recklessly placing protected property of another in danger of damage  must merge because both prohibitions address danger to the life and safety of persons. Id. at 63-64, 153 P.3d 688. Following the reasoning in Barrett, in which the court determined that the circumstances merely constituted different aggravating factors for murder, we similarly concluded that the circumstances constituted no more than different theories under which second-degree arson is aggravated to first-degree arson. Id. at 63, 153 P.3d 688.
Most recently, in State v. Crawford, 215 Or.App. 544, 555-56, 171 P.3d 974 (2007), we distinguished our decision in Luers and determined that two counts of unlawful use of a weapon constituted separate statutory violations and therefore did not merge. In that case, the defendant was convicted of two counts of unlawful use of a weapon for a single criminal act. One count was based on his possession of a gun with intent to use it against a particular person, as prohibited by one of the paragraphs in the relevant offense statute, while the other count was based on his discharge of that weapon at a house and car in an urban area, as prohibited by another of the paragraphs in the same offense statute. Id. at 546, 171 P.3d 974. We examined the text of the offense statute and also its legislative history to determine that, although both prohibitions address the risk of physical harm to persons, the prohibition against the indiscriminate discharge of a weapon in an urban area was enacted later in order to address additional concerns. Id. at 554-55, 171 P.3d 974. Because the provisions addressed different legislative concerns, we concluded that the defendant's convictions did not merge. Id. at 555-56, 171 P.3d 974.
With the foregoing cases in mind, we return to the question whether defendant in this case violated "two or more statutory provisions" when he threatened the use of a weapon while shoplifting with another person present. Because ORS 164.405(1) provides two bases upon which a defendant can be convicted of second-degree robbery, we must determine whether the legislature intended to define a single crime or two separate crimes. Critical to that determination is whether the paragraphs at issue address "separate and distinct legislative concerns." Barrett, 331 Or. at 33, 10 P.3d 901 (citing Crotsley, 308 Or. at 278, 779 P.2d 600).
As the Supreme Court did in White, we turn first to the text of the relevant offense statute, which is, in this case, the second-degree robbery statute. As pertinent to merger under ORS 161.067(1), the text of the second-degree robbery statute has two plausible meanings. One is that ORS 164.405(1)(a) and (b) are simply alternative theories under which to charge and convict a defendant with a single crime  that is, second-degree robbery. Another is that the legislature intended the conduct prohibited in paragraphs (1)(a) and (1)(b) to constitute separate crimes for which a defendant may be separately punished, if he violates both.
Specifically, by its terms, ORS 164.405(1)(a) addresses the situation in which a robber purports to be armed but is actually unarmed. The text clearly demonstrates the legislature's intention to address the risk of psychological harm to the victim who believes that the robber is armed. It is similarly clear that the legislature did not enact that paragraph to address the risk of physical harm, because the robber is, in fact, unarmed.
Next, ORS 164.405(1)(b) addresses the situation in which a robber is aided by another person who is present on the scene. The text suggests that the legislature may have been concerned with the increased risk of physical harm to the victim when there is *510 more than one robber present. It also suggests that the legislature may have been concerned with the likelihood of the victim's heightened fear at being confronted by more than one robber.
At first blush, this case appears similar to Johnson and Nevarez, in which the two paragraphs in each case shared a common legislative concern but one was more expansive in scope and addressed an additional legislative concern. The text of both ORS 164.405(1)(a) and (b) appear to address the risk of psychological harm to the victim. However, paragraph (1)(b) appears also to address the risk of physical harm. Consequently, a cursory textual analysis appears to weigh against merger of defendant's convictions.
Still examining the text of the second-degree robbery statute, we note that the legislature's use of a single subsectionsubsection (1)to identify the two ways in which second-degree robbery can be committed is some indication of an intention to define a single crime. See Kizer, 308 Or. at 243, 779 P.2d 604 (determining that, because, without the letters (a) and (b), the provision at issue would have been a single provision, insertion of the lettering for readability did not change the substance of the statute that defined a "single crime"); Luers, 211 Or.App. at 62, 153 P.3d 688 (stating that the fact that the defendant had violated different paragraphs within a single subsection in the offense statute weighed in favor of merger). However, we do not find the legislature's use of a single subsectionits "visual form," Kizer, 308 Or. at 243, 779 P.2d 604  to weigh in favor of merger in this case. The legislature also used a single subsection to define the crime of first-degree robbery, and we determined in Johnson and Nevarez that the paragraphs within the single numbered subsection constitute "two or more statutory provisions" for the purposes of the anti-merger statute.
In any event, examination of the legislative history resolves any ambiguity. The official legislative commentary to the second-degree robbery statute clearly demonstrates that ORS 164.405(1)(a) and (b) were enacted to address separate and distinct legislative concerns. The commentary confirms that paragraph (1)(a) was enacted to address only the risk of psychological harm to victims who have the subjective belief that they are confronted with an armed robber. See Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 149 (July 1970) (Although that threat poses no greater risk to the victim's personal safety, it "heighten[s] the terror in the victim's mind and * * * is persuasive in overcoming resistance to the robbery."). By comparison, paragraph (1)(b) was enacted to address concerns about the physical safety of a victim when more than one robber is present. Id. The commentary makes clear that, because of the concern for the personal safety of the victim, "the victim's awareness of the presence of the other person is immaterial" so long as the other person "is in such proximity of the victim that he is in a position to assist in exerting force upon the victim." Id. Unlike paragraph (1)(a), which is only concerned with the impression in the mind of the victim regarding whether the robber is armed, the focus of paragraph (1)(b) is not the "subjective effect" of the other person's presence on the victim.
Therefore, legislative history of the second-degree robbery statute demonstrates that, when enacting the two paragraphs at issue in this case, the legislature intended to define separate crimeseach paragraph addresses a separate and distinct legislative concern. Moreover, to the extent that overcoming resistance to the robbery is a legislative concern common to both paragraphs, we are unpersuaded that the legislature intended for separate convictions to merge on the basis of that commonality. Circumstances under which the actor uses or threatens the use of force to overcome the victim's resistance to the taking of the property is precisely what defines the crime of robbery and differentiates it from the crime of theft. To identify the legislative concern addressed by the second-degree robbery statute in such a general way  that is, as overcoming the resistance of the victim  would be meaningless because it would eliminate any distinction between the varying degrees of robbery.
*511 Nevertheless, whether the legislative concerns are overlapping or entirely distinct, we conclude that the legislature intended the paragraphs at issue in this case  ORS 164.405(1)(a) and (b)  to define separate crimes because they address separate and distinct legislative concerns. Consequently, all three conditions required by ORS 161.067(1) are met in this case. Accordingly, the sentencing court did not err in entering separate convictions against defendant.
Defendant also assigns error to the sentencing court's use of his juvenile record in determining his sentence. He first argues that the sentencing court erred in considering defendant's prior juvenile adjudication in the calculation of his criminal history score. We reject that contention without discussion.
Defendant also argues that he would be eligible for a downward departure from his mandatory minimum sentence under Ballot Measure 11 (1994), codified at ORS 137.700, had the sentencing court not relied on a prior juvenile adjudication. The state responds that, although prior juvenile adjudications cannot be used for the purpose of an upward departure, that reasoning does not necessarily apply to eligibility for a downward departure. We previously considered, and rejected, an argument identical to defendant's in State v. Crescencio-Paz, 196 Or.App. 655, 662-64, 103 P.3d 666 (2004), rev. den., 339 Or. 230, 119 P.3d 790 (2005) (determining that it is constitutionally permissible to allow a sentencing court discretion to make findings to impose a lesser sentence). Because that decision directly addresses defendant's contention, we reject his final assignment of error without further discussion.
Affirmed.