Argued and submitted November 12, 2008, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court reversed, and case remanded to circuit court for further proceedings June 18, 2009

STATE OF OREGON,
*Respondent on Review,*

*v.*

RICKY LASHAWN WHITE,
aka Ricky Leshawn Booker,
aka Ricky Leshawn White,
aka Jermaine Marcell,
*Petitioner on Review.*

(CC 041136028; CA A128491; SC S055672)

211 P3d 248

Robin A. Jones, Senior Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

Kistler, J., concurred and filed an opinion in which Walters and Linder, JJ., joined.

**BALMER, J.**

The issue in this criminal case is whether, under ORS 161.067(1), the trial court should have merged defendant's guilty verdicts for two counts of second-degree robbery that arose out of the same criminal episode. One count was based on ORS 164.405(1)(a) (robbery while purporting to be armed with a dangerous weapon), and the other was based on ORS 164.405(1)(b) (robbery when aided by the actual presence of another person). The Court of Appeals affirmed the trial court's decision not to merge the guilty verdicts on the two counts. *State v. White*, 217 Or App 214, 175 P3d 504 (2007). We allowed defendant's petition for review and now reverse and remand for further proceedings.

We take the relevant facts from the Court of Appeals opinion:

"Fender, a loss prevention employee at the Hollywood West Fred Meyer in Portland, saw Sims, who was with defendant, select a watch from a display and remove its packaging. Neither Sims nor defendant paid for the watch. After requesting back-up from other loss prevention employees, Fender followed Sims and defendant as they left the store with the watch. Fender approached Sims, who had the watch in his hand, and inquired about the unpaid merchandise. Sims told Fender that he would stab him if he touched him. Boyce, another loss prevention employee, approached defendant and told him that the store does not apprehend shoplifting accomplices and that he should leave. Defendant did not leave the scene. Around that time, several other loss prevention employees also approached Sims and defendant. Sims continued to threaten the group with the use of a weapon, although neither Sims nor defendant ever produced a weapon. Fender called 9-1-1.

"The group of employees followed Sims and defendant into the parking lot. Boyce followed defendant as he moved slightly away from the group and placed his sweatshirt on top of a parked car. When Boyce took defendant's sweatshirt off of the car, defendant took the sweatshirt back and told Boyce not to touch it. While Boyce and defendant were among the parked cars, defendant told Boyce that he would stab Boyce if he touched him.

"The car on which defendant had placed his sweatshirt pulled up next to Sims, and Sims, who was still holding the watch, got into the car. The car drove away, leaving defendant behind. The employees continued to follow defendant to the edge of the parking lot. As defendant left the parking lot, Officer Helzer, who was responding to Fender's 9-1-1 call, arrested defendant for robbery. Helzer conducted a search of defendant incident to that arrest and found no weapon.

"After a jury trial, defendant was convicted of two counts of second-degree robbery, both on the basis of his conduct toward Boyce. One count charged defendant with violating ORS 164.405(1)(a), which elevates third-degree robbery to second-degree robbery if the person '[r]epresents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon.' The other count charged defendant with violating ORS 164.405(1)(b), which elevates third-degree robbery to second-degree robbery if the person '[i]s aided by another person actually present.'

"At sentencing, defendant argued that those convictions should merge because they were based on the same criminal episode with respect to a single victim. The prosecutor responded that the two convictions should not merge because each was based on a paragraph of the statute that requires proof of an element that the other paragraph does not. The sentencing court entered separate convictions."

*State v. White*, 217 Or App at 216-17.

On appeal, defendant assigned as error the trial court's failure to merge the robbery counts.[1] The Court of Appeals affirmed, concluding that the two statutory provisions that defendant had violated—robbery purporting to be armed and robbery aided by the presence of another person—addressed "separate and distinct legislative concerns" and therefore constituted "separately punishable offenses" under Oregon's anti-merger statute, ORS 161.067(1).[2] *White*, 217 Or App at 224-25.

---

[1] Defendant also assigned error to the trial court's use of defendant's juvenile record in determining his sentence. We decline to address that issue. *See* ORAP 9.20(2) (court need not address all questions presented for review).

[2] Although the anti-merger statute mandates that certain offenses are "separately punishable," the issue whether the defendant receives consecutive or concurrent sentences is resolved under a different statute, ORS 137.123. The only issue presented in this case is whether the trial court should have merged the

ORS 161.067(1)—the "anti-merger" statute—provides, in part:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

ORS 161.067(1).[3] A court will apply that statute and find separately punishable offenses if (1) the defendant engaged in acts that constituted "the same conduct or criminal episode"; (2) the defendant's acts violated "two or more statutory provisions"; and (3) each statutory provision requires "proof of an element that the others do not." *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989) (internal quotation marks omitted). The parties do not dispute that defendant engaged in a single criminal episode or that ORS 164.405(1)(a) and (b) contain different elements. The remaining issue, which the parties do dispute, is whether defendant's acts violated "two or more statutory provisions." ORS 161.067(1). Defendant argues that second-degree robbery is a single statutory provision and, therefore, his guilty verdicts under ORS 164.405(1)(a) and (b) merge. The state responds that the Court of Appeals correctly decided that paragraphs (a) and (b) of ORS 164.405(1) are separate "statutory provisions" and that the guilty verdicts do not merge.[4]

---

jury's guilty verdicts on the two different robbery counts; defendant does not challenge his sentence.

[3] The anti-merger statute has other subsections that set out when separately punishable offenses will be found based on criminal conduct that involves more than one victim, ORS 161.067(2), and when the conduct "violates only one statutory provision and involves only one victim," but nevertheless involves "repeated violations" of the same provision involving the same victim. ORS 161.067(3). Neither party suggests that those provisions of the anti-merger statute apply here.

[4] The parties and the courts below often refer to the issue in this case as being whether defendant's "convictions" merge. However, neither ORS 161.067 nor the statutes respecting the procedures for entry of judgment in a criminal case use the term "conviction" to describe any event or status prior to the trial court's entry of judgment following trial and sentencing. *See* ORS 137.071(2)(g) ("judgment" shall include determination of each charge, which may include "determination * * * of conviction"). Rather, the jury (or, in a bench trial, the court) finds a defendant "guilty" or "not guilty" on each offense charged in the accusatory instrument, *see* ORS 136.455 (so providing), and the defendant is not formally "convicted" on any charge until the trial court enters a judgment. Thus, a trial court applies the merger statute to guilty verdicts on particular counts, rather than to "convictions."

■ ■ As an initial matter, we note that determining whether a defendant violated one statutory provision or two statutory provisions does not depend entirely on the structural form that the criminal statute takes. "Statutory provision" is not defined as "a section, subsection, or paragraph"; it instead means "any provision defining a 'single crime,' whatever visual form the provision is given." *State v. Kizer*, 308 Or 238, 243, 779 P2d 604 (1989). Thus, to determine whether an action violates two statutory provisions, we must determine whether the legislature intended to create two crimes or only one. Of course, one indicator of legislative intent is the visual form that the statute takes. *See State v. Barrett*, 331 Or 27, 35, 10 P3d 901 (2000) ("[T]he use of a single section * * * is some indication that the legislature intended to define a single crime."). But, because that factor is not dispositive, we also consider other aspects of the text and context of the statute to help determine whether it creates two crimes or only one.

In *State v. White*, 341 Or 624, 147 P3d 313 (2006), for example, this court examined the first-degree burglary statute, ORS 164.225,[5] and determined, based on the text of the statute, that the legislature had intended to create only one crime. After an incident in which the defendant had entered his former girlfriend's apartment and assaulted her, the defendant was convicted of two counts of first-degree burglary for (1) entering and remaining in a building with the intent to commit assault; and (2) entering and remaining in a building with the intent to commit menacing. *White*, 341 Or at 627. Looking at the "clear words of the statute," the court noted that the burglary statutes require "intent to commit *a* crime"—that is "any crime"; it is irrelevant what crime the defendant intends to commit. *Id.* at 640. For that reason, the court determined that the text of the statute did not "suggest a legislative intent to treat a single unlawful entry or remainder as violating more than one 'statutory provision' based on the burglar's intent to commit more than one crime inside the building." *Id.*

---

[5] The relevant statutory wording comes from ORS 164.215 and is incorporated by reference into ORS 164.225: "[A] person commits the crime of burglary * * * if the person enters or remains unlawfully in a building with intent to commit a crime therein."

Similarly, in *Barrett*, 331 Or 27, this court looked at the aggravated murder statute in considering whether a sentencing court could impose multiple life sentences on a defendant for three counts of aggravated murder under ORS 163.095,[6] each of which was based on a different aggravating circumstance. After examining the text and context of the statute, the court determined that the legislature had intended to set out the various theories that could be used to prove a single element, namely "aggravation," of a single crime, aggravated murder. As to the text of the statute, ORS 163.095 defined aggravated murder as murder accompanied by "any" of the listed aggravating circumstances. Because "any" means "one or more," the court determined that the wording of the first sentence of ORS 163.095 "suggest[ed] that any or all the enumerated circumstances simply serve to prove the single essential element of 'aggravation.' " *Barrett*, 331 Or at 35. For context, the court then looked to the statutes defining the penalties for murder and aggravated murder. If a murder is committed with one of the 18 aggravating circumstances described in ORS 163.095, then the penalty is greater than that for "simple murder." That sentencing scheme "suggest[ed] a single legislative intent to punish more severely certain murders that the legislature deems to be particularly heinous." *Id.* at 35-36. Because the court determined that the legislature had intended to create a single crime when it enacted the aggravated murder statute, the court concluded that the defendant's guilty verdicts should have merged.

Some of this court's prior cases have examined the legislative history of the substantive criminal statutes at issue in those cases for assistance in determining whether the legislature intended to create a single crime or multiple crimes. In *Kizer*, 308 Or 238, for example, the legislative history indicated that the legislature had intended to create only one crime, despite the fact that it had divided the statute into

---

[6] Under ORS 163.095, aggravated murder is "murder as defined in ORS 163.115 which is committed under, or accompanied by, any of" 18 different aggravating circumstances. The defendant in *Barrett* was charged with three counts of aggravated murder: Count 1, for intentionally killing the victim during the commission of a robbery; Count 2, for intentionally killing the victim during the commission of a kidnapping; and Count 3, for killing the victim to conceal the defendant's identity. *State v. Barrett*, 331 Or 27, 29, 10 P3d 901 (2000).

two sections. In *Kizer*, the issue was whether, under ORS 165.007(1), uttering a forged document and falsely making a written instrument should be treated as two crimes or as only a single instance of forgery.[7] The court looked to the Commentary to ORS 165.007, which stated that the legislature had intended forgery to be "a single crime that may be committed by falsely making, completing, or altering a written instrument or by uttering a forged instrument with knowledge of its forged character." *Kizer*, 308 Or at 242 (internal quotation marks omitted). Because the legislative history demonstrated that the legislature had intended to create only a single crime, the court concluded that "the terms 'falsely makes, completes or alters a written instrument or utters a written instrument which the person knows to be forged' constituted a single 'provision' * * * only made easier to read by inserting the letters (a) and (b)." *Id.* at 243.

Despite the foregoing case law, there has been some confusion as to the proper analysis for determining whether guilty verdicts merge under ORS 161.067(1), in part attributable to statements in this court's opinion in *Crotsley*, 308 Or 272. In *Crotsley*, the issue was whether a defendant could be convicted and punished separately for first- and third-degree rape[8] based on the same criminal conduct. The defendant had forced the 14-year-old victim in that case to engage in sexual acts by threatening her with a knife, thus violating both the third-degree rape statute, which prohibited sexual

---

[7] ORS 165.007(1) provides:

"A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"(a) Falsely makes, completes or alters a written instrument; or

"(b) Utters a written instrument which the person knows to be forged."

To "falsely make" a written instrument means "to make or draw a complete written instrument in its entirety * * * which purports to be an authentic creation of its ostensible maker, but which is not * * * because * * * the ostensible maker did not authorize the making or drawing thereof." ORS 165.002(4). To "utter" a written instrument means "to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument * * * to another." ORS 165.002(7).

[8] The defendant also was convicted of first- and third-degree sodomy, but because the wording and legislative history of the rape and sodomy statutes demonstrated that "the statutory schemes for grading the various rape and sodomy offenses were intended to be identical," the court applied the same analysis to the rape and sodomy statutes. *State v. Crotsley*, 308 Or 272, 279, 779 P2d 600 (1989).

intercourse with a female under the age of 16, ORS 163.355(1), and the first-degree rape statute, which prohibited sexual intercourse by forcible compulsion. ORS 163.375(1)(a). In explaining its analysis, the court focused on whether the two statutes addressed "separate and distinct legislative concerns." *Crotsley*, 308 Or at 278. The court noted that the latter provision, which required forcible compulsion, was "a clear statutory prohibition against forcing sex on any female." *Id.* at 279. In contrast, "[a]ll other variations of first degree rape (as well as all variations of second and third degree rape) are similar to each other in that they accord special protection to specified groups of females by making sexual intercourse with one of them a crime even with 'consent.'" *Id.* Because the two provisions addressed "separate and distinct legislative concerns"—preventing forcible rape and preventing sexual intercourse with certain classes of victims—the court determined that the defendant had violated two statutory "provisions."

Based on those statements in *Crotsley*, the state argues that, *whenever* a statute addresses two distinct legislative concerns, then the legislature has created two "provisions" for purposes of ORS 161.067(1). That interpretation is incorrect for two reasons. First, as discussed above and as articulated by this court in *White* and *Barrett*, the appropriate inquiry is whether the legislature intended to create a single crime or two crimes; the fact that a statute addresses two legislative concerns may be a useful guide when analyzing the legislature's intent, but it is not dispositive. Second, every statutory section that "requires proof of an element that the others do not," ORS 161.067(1), necessarily involves a distinct legislative concern—otherwise there would be no need for the additional element. And, we know from *Crotsley*, 308 Or at 278, and *Barrett*, 331 Or at 32, that whether an additional element must be proved and whether there are "two or more statutory provisions" are separate inquiries under ORS 161.067(1). As a result, we cannot focus solely on the fact that the legislature may have had separate reasons for enacting each section of a statute. Instead, we view the statute as a whole, looking to the text, context, and, when appropriate, legislative history of the statute. That analysis

includes consideration of whether the sections, although addressing different concerns, also may address, on a more general level, one unified legislative objective.

■     Having identified the appropriate analysis, we turn to the robbery statutes at issue here to determine whether the legislature intended to define a single crime of second-degree robbery or two separate crimes. ORS 164.405(1) contains two paragraphs defining the crime of second-degree robbery—a robbery in which the robber represents that he or she is armed (paragraph (a)) and a robbery in which the robber is aided by another person who is actually present (paragraph (b)).[9] Defendant argues that those two paragraphs are simply alternative ways of proving a single crime and that his guilty verdicts under the two counts therefore should be merged into a single conviction for second-degree robbery. The state counters that, under ORS 161.067(1), the issue is whether ORS 164.405(1)(a) and ORS 164.405(1)(b) reflect the intent of the legislature to establish two "separately punishable offenses" and that, as *Crotsley* states, that inquiry focuses on whether the text and the legislative history of that statute demonstrate that the paragraphs "address separate and distinct legislative concerns." Moreover, the state argues, even if the focus is on the text and context of the robbery statutes, the legislature's intent is clear that the two different ways of committing second-degree robbery are "separate provisions" and "separately punishable offenses." The state points out that those provisions are set out in separate paragraphs of the second-degree robbery statute and that, under ORS 161.067(1), "each provision requires proof of an element that the other[ ] do[es] not."

The state's argument, relying on the legislature's use of two separate paragraphs and the fact that each paragraph requires proof of different elements, however, ignores

---

[9] ORS 164.405 provides:

"(1) A person commits the crime of robbery in the second degree if the person [commits third-degree robbery] and the person:

"(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or

"(b) Is aided by another person actually present.

"(2) Robbery in the second degree is a Class B felony."

this court's focus, in applying the anti-merger statute, on a separate and more fundamental inquiry: Whether the text, context, and legislative history of the second-degree robbery statute demonstrate that "the legislature intended to define a single or two separate crimes," *White*, 341 Or at 638-39, when it enacted that statute. *See Kizer*, 308 Or at 242-43 (using legislative history); *White*, 341 Or at 640 (using statutory text); *Barrett*, 331 Or at 35-36 (using text and context of statute).[10]

We begin with the text and context of the statute. ORS 164.405 is one of three statutes that, together, make up the statutory scheme respecting robbery. In those statutes, the legislature has provided an incrementally graded set of standards for determining the seriousness of different forms of robbery and has divided those standards into three groups—third-degree robbery, second-degree robbery, and first-degree robbery. Third-degree robbery is the least serious and describes the basic crime of robbery: taking or attempting to take property from another, while preventing or overcoming the victim's resistance to giving up the property by using or threatening to use physical force. ORS 164.395.[11] The crimes of second- and first-degree robbery then use third-degree robbery as a foundation and build on

---

[10] Even if we were to put to one side this court's decisions interpreting the anti-merger statute, including *Kizer*, *White*, and *Barrett*, it is not at all clear that the state's construction of that statute is supportable. Justice Kistler's concurring opinion argues that the legislative history of ORS 161.067(1) demonstrates that the phrase "statutory provision" in that statute refers to a separately defined statutory crime or separate degree of crime—and not to alternative ways of committing that crime. 346 Or at 296-98 (Kistler, J., concurring). Our holding today is based on ORS 161.067(1) as we have interpreted that statute in cases decided over the last 20 years, but there is no inconsistency between the results in those cases and the concurring opinion.

[11] ORS 164.395 provides:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle.

"(2) Robbery in the third degree is a Class C felony."

its elements by identifying additional elements that, if present, make the crime a more serious one. The highest level of robbery, first-degree robbery, is a robbery in which the robber is armed or actually causes or attempts to cause the victim serious injury. ORS 164.415.[12] Second-degree robbery—the crime that concerns us here—is the intermediate level of robbery. The legislature apparently determined that the additional circumstances of (1) the robber representing that he or she is armed (even if he or she is not), and (2) the robber having the potential assistance of another person, are similar in seriousness to each other, and that both lie between the greater seriousness of the robber being armed and the lesser seriousness of unarmed threats by a single robber. The legislature chose the same intermediate designation—second-degree robbery, a Class B felony—to apply to a robbery that is committed with either one of those enhancing elements. In contrast, first-degree robbery is a Class A felony, and third-degree robbery is a Class C felony. The legislature's creation of the crime of second-degree robbery thus reflects concern with the increased threat of violence from a purported weapon (even if it is a threat that the robber cannot make good on) and from the presence of an accomplice with the robber.

By its terms, ORS 164.405 defines a *single* crime—second-degree robbery. The only question is whether the fact that there are two different circumstances that, individually, can elevate third-degree robbery to second-degree robbery means that the legislature intended there to be two separately punishable offenses. That the two circumstances are in the same statutory section might mean that—although they involve proof of different facts—they are related in the same way to first-degree and third-degree robbery, in that they both lie between armed and unarmed threats of violence in

---

[12] ORS 164.415 provides:

"(1) A person commits the crime of robbery in the first degree if the person [commits third-degree robbery] and the person:

"(a) Is armed with a deadly weapon;

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person.

"(2) Robbery in the first degree is a Class A felony."

terms of seriousness. Or, because the legislature divided the section into two paragraphs and each paragraph requires proof of an element that the other does not, the legislature may have intended to define two separate crimes. The definition of the crime here is susceptible of two plausible meanings, and we turn to the legislative history for more specific guidance. *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009) (following that approach).

The robbery statutes at issue here are the product of the comprehensive revision of the state criminal code in 1971. The Commentary to the criminal code revision explains that those statutes "provide[ ] * * * three ascending degrees of robbery." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 150, 154 (July 1970). The text of ORS 164.395 "contains the basic statement of the crime," with the texts of ORS 164.405 and ORS 164.415 "adding one or more of certain aggravating factors to the crime." Commentary at 154. The text of ORS 164.405 "raises the crime to robbery in the second degree if the robber creates the impression that he is armed" or if he is "aided by another person actually present." *Id.* at 155 (emphasis omitted).

"Subsection (1)(a) is intended to cover the type of robbery in which the actor is, in fact, unarmed, but conveys to the victim the impression that he has a weapon. While such a threat may not create any greater risk to the person of the victim, it does heighten the terror in the victim's mind and also, is persuasive in overcoming resistance to the robbery."

*Id.* As to the presence of an accomplice, "[t]he primary rationale behind paragraph (b) of subsection (1) of [ORS 164.405] is the increased danger of an assault on the victim when the robber is reinforced by another criminal who is actually present." *Id.*

What the statutes and the legislative history indicate is an incremental classification, not of levels of actual violence during the commission of a robbery, but of levels of the potential for violence, including its potential extent. Neither of the two factors identified in the second-degree robbery

statute—purporting to have a weapon and having an accomplice present—requires actual or attempted violence. Obviously, the absent weapon cannot be used against the victim, and the other statutory element is met if the "accomplice is in such proximity of the victim that *he is in a position to assist in exerting force upon the victim*," *id.* (emphasis added), even if no force is used. Rather, the Commentary focuses on the degree of perceived or actual threat to the victim, which is increased by the presence of either or both of those two factors, and which increases the likelihood that the victim will comply with the robber's demands. Taken together, the three robbery statutes indicate that the lowest level is the use or threat of the use of unarmed physical force; at the highest level is the more persuasive threat of an actual weapon, the use or attempted use of a weapon, or the use or attempted use of force to cause serious physical injury. In the middle, there is the threat of a weapon that may, in fact, be an empty threat or the heightened threat of unarmed physical force (but no actual use of force) because of the presence of an additional person.

The Court of Appeals focused on the *differences* between the two elements discussed above:

> "The official legislative commentary to the second-degree robbery statute clearly demonstrates that ORS 164.405(1)(a) and (b) were enacted to address separate and distinct legislative concerns. The commentary confirms that paragraph (1)(a) was enacted to address only the risk of psychological harm to victims who have the subjective belief that they are confronted with an armed robber. By comparison, paragraph (1)(b) was enacted to address concerns about the physical safety of a victim when more than one robber is present."

217 Or App at 224-25 (citation omitted). The Court of Appeals thus juxtaposed "psychological harm to victims" with "concerns about the physical safety of a victim" and reasoned that those considerations differ. The Court of Appeals, of course, was correct in noting the "separate and distinct legislative concerns," *id.* at 223-25, and, if that were the only consideration in applying the anti-merger statute, then there might not be merger here.

However, as discussed above, and notwithstanding our reference to that factor in *Crotsley*, the more central question under ORS 161.067(1) is not whether ORS 164.405(1)(a) and (b) address separate legislative concerns, but whether the legislature intended those two paragraphs to define a single crime of second-degree robbery or two separate crimes. *White*, 341 Or at 638-39. Examined in that light, it appears that the Court of Appeals' analysis focused too narrowly on the Commentary's distinctions between the two ways in which a third-degree robbery could be elevated to second-degree robbery. The Commentary, of course, was intended to explain the origins of the various provisions of the revised criminal code, the elements of each crime, and the distinctions between different crimes. In this case, the Commentary usefully describes the legislative intent behind the two different "aggravating factors" in ORS 164.405(1). However, the Commentary sheds no particular light on whether the legislature intended that statute "to define a single crime or two separate crimes." In our view, the comparison of the psychological harm to victims that is the apparent focus of paragraph (1)(a) and the threat to physical safety reflected in paragraph (1)(b) misses the more general thrust of the statutory scheme.[13]

The crime of robbery is not only, or even primarily, about punishing a defendant for inflicting violence or psychological injury on the victim. The three robbery statutes reflect, as their common concern, the threat or likelihood of

---

[13] The Court of Appeals correctly perceived the issue that we address here, noting that one could "identify the legislative concern addressed by the second-degree robbery statute" in a "general way—that is, as overcoming the resistance of the victim." *State v. White*, 217 Or App 214, 225, 175 P3d 504 (2007). The court rejected that way of identifying the legislature's intent, reasoning that "it would eliminate any distinction between the varying degrees of robbery," *id.*, and the court pointed out that the use or threat of force to overcome the victim's resistance is what distinguishes the crime of robbery from the crime of theft. *Id.* That analysis, however, gives insufficient weight to the fact that the legislature did, in fact, distinguish between the different degrees of robbery, creating an ascending scale of *different* degrees of one crime, each of which it classified as a different level of felony and enacted as a different statute. Identifying a common legislative concern in the two means of proving second-degree robbery—which is similar to the concerns underlying all the robbery statutes, but greater in magnitude than third-degree robbery and less than first-degree robbery—does not eliminate the statutory distinctions, but, rather, gives effect to the legislature's statutory structure.

violence to the victim, but the threat of violence (or actual violence) is part of the crime of robbery only when it is used "in the course of committing or attempting to commit theft or unauthorized use of a vehicle." ORS 164.395(1). Actual or threatened violence, of course, is punishable under other statutes, but, in the context of robbery, it is a secondary consideration to the coercive effect of potential violence in the course of theft. Robbery is the taking of property using threats of violence or otherwise creating a sense of fear in the victim, thus forcing the victim to hand over property. It is the concept of fear or threat of violence that separates robbery from mere theft. *See Black's Law Dictionary* 924 (6th ed 1991) (robbery defined as "[f]elonious taking of money * * * in the possession of another * * * and against his will, accomplished by means of *force or fear*" (emphasis added)); 4 William Blackstone, *Commentaries on the Laws of England* 241 (1769) ("Open and violent larciny [*sic*] from the person, or robbery, * * * is the felonious and forcible taking, from the person of another, of goods or money to any value, by putting him in *fear*." (Original emphasis omitted; emphasis added.)). The use or threat of violence is what causes the victim to part with property, and that coercive effect is what each of the robbery statutes addresses.

As the three robbery statutes indicate, the nature of the threat of violence—whether actual or perceived—aggravates the crime of robbery and raises the crime from the third degree to the second or first degree. If the robber is alone or one of many, unarmed or armed with a deadly or dangerous weapon, the effect of the specific circumstance results in different levels of threat that may persuade the victim to part with his or her property with more or less reluctance. The legislature determined that the threat of violence when a robber purports to have a weapon or when he or she has an accomplice lies somewhere between the threat of violence involved in a confrontation with a lone unarmed robber who threatens but does not use violence and a confrontation with an indisputably armed robber or one who actually uses or attempts to use violence to cause serious injury. In that sense, the three robbery statutes reflect the legislature's judgment regarding the aggravating elements that elevate third-degree robbery to second- or first-degree robbery. *See*

*Barrett*, 331 Or at 36 (aggravating circumstances relating to murder). Paragraphs (a) and (b) of ORS 164.405(1) both address the same coercive effect on the victim of the threat of violence, even though they do so in different ways. The legislature determined that either a purported weapon or the presence of an accomplice, or both, would elevate the crime of third-degree robbery to the crime of second-degree robbery. In our view, the legislature created a single crime of second-degree robbery.[14] The fact that the alternative circumstances that elevate third-degree robbery to second-degree robbery appear in two different paragraphs in ORS 164.405(1) does not make them (or the crime of second-degree robbery) "two * * * statutory provisions." Accordingly, ORS 161.067(1) does not apply here, and the trial court erred in failing to merge defendant's guilty verdicts on the two counts of second-degree robbery.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**KISTLER, J.,** concurring.

Defendant took a watch from Fred Meyer. In the course of doing so, he threatened to stab a store employee with a knife and was assisted by another person who was present. That conduct, the jury found, violated two alternative means of committing second-degree robbery, and the question in this case is whether defendant may be punished for only one offense or two. The answer to that question turns, as the majority recognizes, on whether each alternative means of committing second-degree robbery is a separate "statutory provision" for the purposes of ORS 161.067(1), which defines when the same conduct or criminal episode will give rise to separately punishable offenses.[1]

---

[14] If the legislature determines that the two different ways of elevating third-degree robbery to second-degree robbery, when committed in the course of a single criminal episode, nevertheless should be punished separately, it may indicate its intent in that regard by enacting those two paragraphs as *separate criminal* offenses. *See Crotsley*, 308 Or at 279-80 (no merger where legislature established crimes of first-degree rape and third-degree rape as "separate offenses").

[1] ORS 161.067(1) provides:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do

In a series of decisions over the past 20 years, this court has interpreted the phrase "statutory provision" that the legislature used in ORS 161.067(1), and the majority attempts to reconcile and refine those decisions in the course of determining whether each alternative means of committing second-degree robbery is a separate statutory provision. Those decisions, the majority concludes, require the court to determine, based on the text, context, and the legislative history of the robbery statutes, whether the "legislature intended to create a single crime or two crimes." 346 Or at 283. The majority explains that, among other things, that inquiry "includes consideration of whether [two different statutory] sections, although addressing different [legislative] concerns, may also address, on a more general level, one unified legislative objective." *Id.* Applying that test, the majority determines that, in providing alternative means of committing second-degree robbery, the legislature intended to create only one crime.

The majority appropriately synthesizes and follows our precedents, and I join its opinion. I write separately because, in my view, focusing solely on what our past decisions have said about a statute can sometimes cause us to lose sight of the statutory text that underlies those decisions, and it is occasionally helpful to return to the text, context, and history of a statute to determine whether our decisions have drifted away from the legislature's intent.[2] In my view, an examination of the text, context, and history of ORS 161.067 leads to a simpler and less subjective interpretation of the phrase "statutory provision" than a synthesis of our cases yields. Those sources demonstrate that each crime

---

not, there are as many separately punishable offenses as there are separate statutory violations."

[2] An examination of those sources is particularly appropriate in this case because the two seminal cases that we have spent the last 20 years interpreting did not engage in a textual and contextual analysis of ORS 161.067(1). In *State v. Crotsley*, 308 Or 272, 779 P2d 600 (1989), the court posited, without further explanation, that the phrase " 'two or more statutory provisions' * * * include[s] prohibitions such as those in this case that address separate and distinct legislative concerns," *id.* at 278, a statement that the majority today disavows as an answer to the meaning of that phrase, 346 Or at 289. In *State v. Kizer*, 308 Or 238, 779 P2d 604 (1989), the court found it unnecessary to engage in any analysis of ORS 161.067(1), resting its decision instead on the legislature's statement that uttering a forged instrument and making one were a single crime. *Id.* at 242-43.

identified as such in the criminal code constitutes a separate statutory provision and the fact that there are alternative means of committing those crimes does not make each alternative means a separate provision within the meaning of ORS 161.067(1).

ORS 161.067 has three subsections. The first subsection, which is at issue in this case, identifies the number of separately punishable offenses that exist when the same conduct or criminal episode violates "two or more statutory provisions." ORS 161.067(1). The second subsection identifies the number of separately punishable offenses that exist when the same conduct or criminal episode violates one statutory provision but involves two or more victims. ORS 161.067(2). Finally, the third subsection identifies the number of separately punishable offenses that exist when the same conduct or criminal episode violates one statutory provision, involves one victim, "but nevertheless involves repeated violations of the same statutory provision against the same victim." ORS 161.067(3).

Each subsection of ORS 161.067 refers to violating one or more "statutory provisions." However, neither the criminal code generally nor the text of ORS 161.067 specifically defines what constitutes a "statutory provision," and the word "provision" is broad enough to include either a section defining a crime or a single clause within that section. *Cf. Webster's Third New Int'l Dictionary* 1827 (unabridged ed 2002) (defining "provision" as "a stipulation (as a clause in a statute or contract) made in advance: PROVISO * * * ‹this ~ is one of fundamental importance in our legal . . . system * * *›"). The text, in short, is of little help. The legislature appears to have assumed that the phrase had such a well-understood meaning that no definition was necessary.

Two separate contextual sources, however, provide a clearer picture of the legislature's intent. The first contextual source is an exception to ORS 161.067(3), which illustrates the legislature's understanding of the phrase "statutory provision." After identifying how many separately punishable offenses exist when the same criminal episode violates one statutory provision, involves one victim, but also involves

multiple violations of the same provision against the same victim, ORS 161.067(3) sets out the following exception:

> "Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

The exception is telling in three respects. First, it identifies ORS 163.408 and ORS 163.411 as "statutory provisions." The first statute (ORS 163.408) defines the crime of unlawful sexual penetration in the second degree, and the second statute (ORS 163.411) defines the crime of unlawful sexual penetration in the first degree. That context suggests that each crime identified as such in the criminal code constitutes a separate statutory provision and that, as a general rule, the fact that there may be alternative methods of committing each of those crimes does not make each alternative method of commission a separate statutory provision. Were the general rule otherwise, there would have been no need to add a caveat to ORS 161.067(3) and state that each method of committing unlawful sexual penetration "shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

The texts of the two unlawful sexual penetration statutes shed further light on the meaning of the phrase "statutory provision" in ORS 161.067. Both unlawful sexual penetration statutes identify multiple methods of committing that crime. A person commits the crime of unlawful sexual penetration in the second degree "if the person penetrates the vagina, anus or penis of another with [a foreign object] * * * and the victim is under 14 years of age." ORS 163.408(1). A person commits the crime of unlawful sexual penetration in the first degree "if the person penetrates the vagina, anus or penis of another with [a foreign object]" and

"(a) The victim is subjected to forcible compulsion;

"(b) The victim is under 12 years of age; or

"(c) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical help-lessness."

ORS 161.411(1).

Those two statutes and the statement in ORS 161.067(3) that each of those statutes is a statutory provision lead to two additional conclusions regarding the meaning of the phrase "statutory provision." First, when the legislature creates two crimes with different degrees of seriousness (first-degree unlawful sexual penetration, second-degree unlawful sexual penetration, and the like), each statutorily designated degree of a crime is a separate statutory provision. And, when one act violates two statutory provisions, the only question under ORS 161.067(1) is whether each provision, as charged, requires proof of an element that the other does not. If it does, then there are as many separately punishable offenses as there are separate statutory violations. ORS 161.067(1).

Second, the fact that a crime, such as first-degree unlawful sexual penetration, identifies multiple ways in which the crime may be committed does not mean that one act will give rise to multiple statutory violations. For example, in addition to identifying multiple methods (insertion of a foreign object into a victim's vagina, anus, or penis) of committing unlawful sexual penetration, ORS 161.411(1) also identifies multiple ways in which a person can come within the class of victims whose injury elevates those acts to first-degree unlawful sexual penetration—forcible compulsion, being under the age of 12, or being incapable of consent by reason of mental defect, mental incapacitation, or physical helplessness. Yet, ORS 161.067(3) makes clear that the legislature understood that first-degree unlawful sexual penetration was a single statutory provision and that only multiple methods of committing unlawful penetration would result in multiple statutory violations (and even that was an exception to the general rule). It follows that, for the crime of first-degree unlawful sexual penetration, the fact that the victim was under the age of 12 and also subjected to forcible compulsion does not mean that a single act of penetration

would violate two statutory provisions within the meaning of ORS 161.067(1).

Not only does the exception in ORS 161.067(3) provide insight into the meaning of the phrase "statutory provision," but two cases that preceded the enactment of ORS 161.067 provide additional context. In *State v. Woolard*, 259 Or 232, 484 P2d 314, *on reh'g*, 485 P2d 1194 (1971), and in *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979), the court held that a defendant who committed burglary and theft (when theft was the intended crime on entry into the house) could be punished for only one offense. In *Woolard*, the court inferred from the fact that burglary carried a greater sentence than theft from a dwelling that the legislature intended that the former offense would subsume the latter. 259 Or at 237-38. In *Cloutier*, the court looked to whether the defendant had a single criminal objective in deciding whether the two crimes constituted only one punishable offense. 286 Or at 596-97. Justice Tongue dissented in *Cloutier*. He explained that, before *Woolard* and *Cloutier*, the rule was clear: When one act violated two separate statutes, such as burglary and theft, and each contained an element that the other did not, there were two separately punishable offenses. *Id.* at 605 (Tongue, J., dissenting). In his view, the court erred in *Woolard* and again in *Cloutier* in departing from that rule.[3]

ORS 161.067(1) reinstates the rule that Justice Tongue advocated in *Cloutier*. It reverses the rule from *Woolard* and *Cloutier* that a single act that violates two criminal statutes, such as burglary and theft, will result in only one punishable offense if the two violations are in furtherance of a single criminal objective. There is no reason, however, to think that the legislature intended to go farther than that in reversing the rule in *Woolard* and *Cloutier* and make alternative ways of committing a single crime separately punishable offenses; rather, the most natural interpretation of the phrase "two or more statutory provisions" is that it refers to the sort of statutes defining separate criminal

---

[3] Justice Howell concurred in the result in *Cloutier*. 286 Or at 603. He noted that he had dissented in *Woolard* and that "[a]ny further expression of dissent would be a futility." *Id.* (Howell, J., specially concurring).

offenses, such as burglary and theft, that were at issue in *Woolard* and *Cloutier*.

The legislative history supports that understanding. *See State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009) ("Legislative history may be used to confirm seemingly plain meaning and even to illuminate it * * *."). The legislative history of ORS 161.067 is unique because, as the court noted in *State v. Crotsley*, 308 Or 272, 779 P2d 600 (1989), the legislature enacted one version of the statute in 1985 and the people reenacted by initiative a second, almost identical version of the statute in 1986. *Id.* at 276 n 3. The two versions differ in one respect. The 1985 statute provided, as does the 1986 reenactment, that, when the same conduct or criminal episode violated two or more statutory provisions, there were as many separately punishable offenses as there were separate statutory violations. Or Laws 1985, ch 722, § 4(1); Or Laws 1987, ch 2, § 13(1). The 1985 statute then added the following exception, which the 1986 reenactment omitted:

> "However, when one of the statutory provisions violated is burglary in any degree, and the other statutory provision violated is theft or criminal mischief in any degree, and the theft or criminal mischief was pleaded as the intended crime of the burglary, the burglary and the theft or criminal mischief shall constitute only one punishable offense."

Or Laws 1985, ch 722, § 4(1). The 1985 exception preserves the specific holding in *Woolard* and *Cloutier*, while the 1986 reenactment omits that exception and thus "overrules" the holdings in those cases.[4] But more importantly for the purposes of this case, the 1985 exception equates the phrase "statutory provision" with the crimes of "burglary in any degree" and "theft or criminal mischief in any degree." Put differently, the exception makes clear that the 1985 legislature understood that each degree of burglary, theft, and criminal mischief constituted a separate statutory provision, in much the same way that the exception to ORS 161.067(3) makes that same understanding clear.

---

[4] The 1985 legislative bill was codified as ORS 161.062, and the 1986 initiated measure was codified as ORS 161.067. Initially, both statutes "remain[ed] on the books." *Crotsley*, 308 Or at 276 n 3. However, in 1999, the legislature repealed ORS 161.062, leaving ORS 161.067 in place. Or Laws 1999, ch 136, § 1.

Finally, the explanation to the legislature of the 1985 bill leads to the same conclusion. A spokesperson for the Oregon District Attorneys Association explained that the 1985 counterpart to what is now codified as ORS 161.067(1) "adopts the federal rule first announced in *U.S. v. Blockburger*, 284 U.S. 299 (1932), permitting separate convictions for each proven statutory violation, provided that each statute requires proof of an element not required by others." Testimony, Senate Judiciary Committee, SB 257, May 15, 1985, Ex G (statement of Peter F. Sandrock, Jr.).[5]

Beyond identifying *Blockburger* as the apparent source of what is now ORS 161.067(1), Sandrock's letter does not explain what, in his view, constitutes a "statutory provision." However, in *Blockburger*, the Court used the phrase consistently with the definition set out above. Specifically, the Court explained in *Blockburger* that the Harrison Narcotic Act, Pub L No 223, 38 Stat 785 (1914) (repealed 1970), created two separate criminal offenses. One offense made it unlawful to sell narcotics except in the original stamped package. 284 US at 203-04. The other offense made it unlawful to sell narcotics without a written order. *Id.* The Court described the two crimes as "distinct statutory provisions" and ruled that, because a single sale of narcotics violated both provisions and because each provision required proof of a fact that the other did not, the defendant's single sale gave rise to two separate offenses. 284 US at 304. As the Court used the phrase "statutory provision" in *Blockburger*, that phrase means nothing more or less than what the legislature has defined as a crime.[6]

---

[5] The Court explained in *Blockburger*:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

284 US at 304.

[6] As noted, the people reenacted the 1985 statute in 1986 but omitted the exception discussed above. The official explanation for the measure states that that part of the measure "[s]lightly expand[s] the circumstances under which a person may be convicted of separate offenses." Voters' Pamphlet, General Election, Nov 4, 1986, 52. That explanation accurately describes the difference between the 1986 measure and the 1985 statute but sheds no additional light on the meaning of the phrase "statutory provision."

In my view, the text, context, and history of ORS 161.067 reveal that the phrase "statutory provision" has a more straightforward meaning than our cases have given it. When the legislature makes it a crime to commit certain acts, each statutorily defined crime is a separate statutory provision, and each degree of that crime is a statutory provision. The fact that the legislature identifies alternative ways to commit a crime does not mean that the legislature has created more than one statutory provision, however.

Not only is that interpretation truer to the legislature's intent than the test that the majority draws from our cases, but it also is more certain in its application (both for the courts and the legislature when it drafts criminal statutes). Beyond that, it is consistent with the results in this court's decisions. When, as in *Crotsley*, the state charges a defendant with first- and third-degree rape, each degree of the crime is a separate statutory provision that will give rise to separately punishable offenses, provided that each provision requires proof of an element that the other does not. *Cf. Crotsley*, 308 Or at 278-79 (holding that the two offenses were separate statutory provisions because they addressed separate and distinct legislative concerns). Conversely, when the legislature provides alternative means of committing a specified crime, there is only one statutory provision. It follows that, when in *State v. Kizer*, 308 Or 238, 779 P2d 604 (1989), *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000), *State v. White*, 341 Or 624, 147 P3d 313 (2006), and this case, the state charges and proves both alternative means, only one statutory provision has been violated and there is only one separately punishable offense (assuming of course that there are not multiple victims or repeated violations of the same provision). Because I agree with the result that the majority reaches and because I cannot disagree with its reliance on precedent, I concur in the majority's opinion.

Walters and Linder, JJ., join in this opinion.