Argued and submitted May 29, 2013, reversed and remanded with instructions to merge defendant's convictions for first-degree theft and for resentencing; otherwise affirmed January 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER VAL SLATTON,
*Defendant-Appellant.*

Lane County Circuit Court
201107646; A148739

268 P3d 556

Marc D. Brown, Deputy Public Defender, argued the cause for the appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Rasmussen, Judge pro tempore.*

DUNCAN, P. J.

.

`

---

* Haselton, C. J., *vice* Wollheim, S. J.

**DUNCAN, P. J.**

In this criminal case, a jury found defendant guilty of two counts of first-degree theft for violating two separate paragraphs of the first-degree theft statute, ORS 164.055 (2010), *amended by* Oregon Laws 2013, chapter 24, section 11.[1] Specifically, the jury found defendant guilty of violating ORS 164.055(1)(a) for committing theft of property worth more than $1,000 and of violating ORS 164.055(1)(d) for theft of a firearm. At sentencing, defendant argued that the trial court was required to merge the two guilty verdicts into a single conviction. The trial court rejected that argument and entered a judgment convicting defendant of, among other crimes, two counts of first-degree theft.[2]

Defendant appeals, assigning error to the trial court's refusal to merge the two first-degree theft guilty verdicts into a single conviction and to the court's imposition of restitution. We write only to address defendant's merger claim; we reject defendant's restitution claim without written discussion.

With respect to defendant's merger claim, the issue on appeal is whether merger of defendant's two guilty verdicts for first-degree theft is precluded by ORS 161.067(1). That provision, which is set out below, 268 Or App at 560-61, precludes merger of guilty verdicts for violations of separate statutory provisions if "each provision requires proof of an element that the other does not[.]" ORS 161.067(1).

Reviewing for errors of law, we conclude that ORS 161.067(1) does not preclude merger of defendant's two guilty verdicts for first-degree theft. As explained below, ORS 164.055(1)(a) and (d) are not separate statutory provisions for the purposes of ORS 161.067(1). They were not enacted to create different crimes; rather, they were enacted to specify different ways of committing a particular degree

---

[1] All statutory citations to ORS 164.055 that follow are to the current version. The 2013 amendment does not affect our analysis in this case.

[2] In addition to the two first-degree theft counts, defendant was charged with, and convicted of, one count of each of the following crimes: burglary in the first degree, ORS 164.225; failure to perform the duties of a driver, ORS 811.700; reckless driving, ORS 811.140; recklessly endangering another person, ORS 163.195; and criminal trespass in the second degree, ORS 164.245.

of theft, which the legislature intended to punish more seriously than lesser degrees of theft. As also explained below, the first-degree theft statute, which lists ways that the basic crime of theft can be elevated into first-degree theft, is akin to other statutes that list elevating elements in separate paragraphs or subparagraphs; specifically, the first-degree theft statute is akin to the second-degree robbery statute, ORS 164.405, which the Supreme Court considered in *State v. White*, 346 Or 275, 211 P3d 248 (2009) (*White II*), and to the first-degree sexual abuse statute, ORS 163.427, which the Supreme Court considered in *State v. Parkins*, 346 Or 333, 211 P3d 262 (2009). In *White II* and *Parkins*, the court examined the text, context, and legislative history of those statutes and held that the elevating elements in those statutes were not separate statutory provisions for the purposes of ORS 161.067(1). Following the same analytical approach, we reach the same conclusion in this case with respect to ORS 164.055(1)(a) and (d). Accordingly, we reverse and remand for merger of defendant's two guilty verdicts for first-degree theft and resentencing, and we otherwise affirm.

We begin with a brief statement of the facts, which are few and undisputed. Defendant and two other men took property from a house and, after they were noticed by a person on an adjacent lot, fled the scene by car. Shortly thereafter, police officers stopped the car and arrested defendant and his companions. The officers found property taken from the house in the car and on the road. Specifically, they found a box with antiques in the car and a box with old mail and a collection of buttons on the road. Later, when the officers searched the yard of the house, they found other property that had been taken from the house, including a firearm wrapped in a blanket.

In addition to other charges, the state charged defendant with two counts of first-degree theft in violation of ORS 164.055. One count alleged that defendant "unlawfully and knowingly commit[ted] theft of stamps, postcards, antiques, and other personal property, of a total value of one thousand dollars or more[.]" The other count alleged that defendant "unlawfully and knowingly commit[ted] theft of a firearm[.]"

ORS 164.055 defines first-degree theft. As relevant here, it provides that a person commits first-degree theft if the person commits one of six types of thefts. Specifically, it provides, in part:

"(1)  A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a)  The total value of the property in a single or aggregate transaction is $1,000 or more;

"(b)  The theft is committed during a riot, fire, explosion, catastrophe or other emergency in an area affected by the riot, fire, explosion, catastrophe or other emergency;

"(c)  The theft is theft by receiving committed by buying, selling, borrowing or lending on the security of the property;

"(d)  The subject of the theft is a firearm or explosive;

"(e)  The subject of the theft is a livestock animal, a companion animal or a wild animal removed from habitat or born of a wild animal removed from habitat, pursuant to ORS 497.308 (2)(c); or

"(f)  The subject of the theft is a precursor substance.

"* * * * *

"(3)  Theft in the first degree is a Class C felony."

In this case, defendant was charged with violating ORS 164.055(1)(a) for theft or property worth more than $1,000 and ORS 164.055(1)(d) for theft of a firearm.

A jury found defendant guilty of both counts and, at sentencing, defendant argued that the guilty verdicts should merge. The trial court rejected that argument and entered a judgment convicting defendant of, among other crimes, two counts of first-degree theft. This appeal followed.

As mentioned, on appeal the issue is whether merger is precluded by ORS 161.067(1), which provides,

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as

many separately punishable offenses as there are separate statutory violations."[3]

By its terms, ORS 161.067(1) precludes merger of guilty verdicts based on "the same conduct or criminal episode," when the verdicts are for violations of "two or more statutory provisions" and each statutory provision "requires proof of an element that the others do not[.]" In this case, the parties do not dispute that defendant's two first-degree theft guilty verdicts are based on the same conduct or criminal episode; the dispute is whether they are for violations of two or more statutory provisions.

The parties agree that, under *White II*, when determining whether two different sections, paragraphs, or subparagraphs of a statute constitute separate statutory provisions for merger purposes, the "fundamental inquiry" is whether the text, context, and legislative history of the statute demonstrate that the legislature intended to create a single crime or two separate crimes. 346 Or at 285 (citing *State v. White*, 341 Or 624, 638-40, 147 P3d 313 (2006); *State v. Kizer*, 308 Or 238, 242-43, 779 P2d 604 (1989); *State v. Barrett*, 331 Or 27, 35-36, 10 P3d 901 (2000)). But, they disagree about whether the text, context, and legislative history of the first-degree theft statute, ORS 164.055, demonstrate that the legislature intended to create one crime or separate crimes.

Defendant argues that ORS 164.055(1)(a) and (d) are not separate statutory provisions for the purposes of ORS 161.067(1). He contends that "the theft statutes begin with a basic concept of theft, which is then elevated to first-degree if any of the additional elements in ORS 164.055 are present" and that the additional elements are not separate statutory provisions for the purposes of ORS 161.067(1), rather they are "merely different theories of proving [first-degree

---

[3] ORS 161.067, the so-called "anti-merger statute has other subsections that set out when separately punishable offenses will be found based on criminal conduct that involves more than one victim, ORS 161.067(2), and when the conduct 'violates only one statutory provision and involves only one victim,' but nevertheless involves 'repeated violations' of the same provision involving the same victim. ORS 161.067(3)." *White II*, 346 Or at 279 n 3. Because neither party in this case suggests that those provisions of the anti-merger statute apply here, we do not address those provisions.

theft]." In support of his argument, defendant points out that, in *White II* and *Parkins*, the Supreme Court "construed similar statutes to constitute a single 'statutory provision' even when conduct violates multiple subsections of the statute defining the higher degree of offense."

In response, the state argues that ORS 164.055(1)(a) and (d) are separate statutory provisions. In support of its argument, the state also relies on *White II* and *Parkins*, and contends that ORS 164.055(1)(a) and (d) are separate statutory provisions because they "address different legislative concerns and do not fall under a 'general,' 'unified legislative'" objective. (Quoting *White II*, 346 Or at 284.)

Because both parties rely on *White II* and *Parkins*, we turn to those cases and review them in some detail. The issue in *White II* was whether two separate paragraphs of the second-degree robbery statute, ORS 164.405, were separate statutory provisions for the purposes of ORS 161.067(1). In other words, the issue was whether, when the legislature enacted the separate paragraphs, it intended to create separate crimes. ORS 164.405 provides, in part:

> "(1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 [which defines the lesser crime of third-degree robbery] and the person:
>
> "(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or
>
> "(b) Is aided by another person actually present."

The defendant in *White II* was charged with two counts of second-degree robbery. One of the counts alleged that the defendant violated paragraph (1)(a)—by committing third-degree robbery and representing that he was armed with a dangerous weapon—and the other alleged that he violated paragraph (1)(b)—by committing third-degree robbery and being aided by another person actually present. A jury found the defendant guilty of both counts, and, at sentencing, the defendant argued that the guilty verdicts should merge. The trial court rejected that argument and entered convictions on both counts. The defendant appealed.

On appeal, we affirmed. *State v. White*, 217 Or App 214, 175 P3d 504 (2007) (*White I*), *aff'd in part, rev'd in part*, 346 Or 275, 211 P3d 248 (2009). We examined the text, context, and legislative history of the second-degree robbery statute and concluded that ORS 164.405(1)(a) and (b) addressed different legislative concerns. *Id.* at 223-25. Regarding the legislative history of·the statute, which was enacted as part of the 1971 Criminal Code, we stated that the Commentary to the Proposed Criminal Code

"clearly demonstrates that ORS 164.405(1)(a) and (b) were enacted to address separate and distinct legislative concerns. The commentary confirms that paragraph (1)(a) was enacted to address only the risk of psychological harm to victims who have the subjective belief that they are confronted with an armed robber. By comparison, paragraph (1)(b) was enacted to address concerns about the physical safety of a victim when more than one robber is present."

*White I*, 217 Or App at 224-25 (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 149, 155 (July 1970) (hereinafter Commentary)). Based on our conclusion that the paragraphs addressed different legislative concerns, we further concluded that, when it enacted the paragraphs, the legislature intended to create separate crimes, and, therefore, the paragraphs were separate statutory provisions for merger purposes. *Id.*

On review, the Supreme Court reversed and, in doing so, criticized our reasoning. *White II*, 346 Or at 289-91. The court explained that, when determining whether two paragraphs of a statute are separate statutory provisions for merger purposes, the fundamental question is not why the legislature enacted the paragraphs, but rather, whether, when it enacted the paragraphs, it intended to create one or two crimes. *Id.* at 280. Thus, whether the paragraphs address different legislative concerns is not dispositive; any time the legislature enacts a statute that defines a crime and contains paragraphs that describe different conduct that constitutes the crime, each paragraph can be said to address a different legislative concern, but that does not mean that the legislature intended to create multiple crimes. *Id.* at 283-84.

In support of that point, the Supreme Court cited its decision in *Barrett*, 331 Or 27. *White II*, 346 Or at 283-84. In *Barrett*, the defendant had been found guilty of three counts of aggravated murder, each based on a different paragraph of the aggravated murder statute, ORS 163.095 (2000), *amended by* Oregon Laws 2005, chapter 264, section 17, and Oregon Laws 2012, chapter 54, section 26, and the issue was whether the guilty verdicts merged.[4] ORS 163.095 provides that aggravated murder is "murder as defined in ORS 163.115 which is committed under, or accompanied by, any of" 19 different aggravating circumstances set out in separate sections, paragraphs, and subparagraphs.[5] (At

---

[4] All statutory citations to ORS 164.095 that follow are to the current version. The 2005 and 2012 amendments do not affect our analysis in this case.

[5] ORS 163.095 provides:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"(1)(a) The defendant committed the murder pursuant to an agreement that the defendant receive money or other thing of value for committing the murder.

"(b) The defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder.

"(c) The defendant committed murder after having been convicted previously in any jurisdiction of any homicide, the elements of which constitute the crime of murder as defined in ORS 163.115 or manslaughter in the first degree as defined in ORS 163.118.

"(d) There was more than one murder victim in the same criminal episode as defined in ORS 131.505.

"(e) The homicide occurred in the course of or as a result of intentional maiming or torture of the victim.

"(f) The victim of the intentional homicide was a person under the age of 14 years.

"(2)(a) The victim was one of the following and the murder was related to the performance of the victim's official duties in the justice system:

"(A) A police officer as defined in ORS 181.610;

"(B) A correctional, parole and probation officer or other person charged with the duty of custody, control or supervision of convicted persons;

"(C) A member of the Oregon State Police;

"(D) A judicial officer as defined in ORS 1.210;

"(E) A juror or witness in a criminal proceeding;

"(F) An employee or officer of a court of justice;

"(G) A member of the State Board of Parole and Post-Prison Supervision; or

the time *Barrett* was decided, ORS 163.095 listed 18 aggravating circumstances.) The aggravating circumstances are varied; they relate to the method of the murder, ORS 163.095(1)(a) - (b), (e), (2)(c) - (e); the defendant's criminal history and custody status, ORS 163.095(1)(c), (2)(b), (f); the number of victims, ORS 163.095(1)(d); and the type of victim, ORS 163.095(1)(f), (2)(a). Although the aggravating circumstances address different legislative concerns, the *Barrett* court concluded that the legislature had not intended to create 18 different crimes; rather, it had intended to create a single crime "to punish more severely certain murders that [it] deem[ed] to be particularly heinous." 331 Or at 35-36. Thus, the paragraphs did not create different crimes and, therefore, were not separate statutory provisions for the purposes of ORS 161.067(1). Accordingly, the *Barrett* court held, the defendant's three guilty verdicts merged into a single conviction for aggravated murder.

Relying on *Barrett,* the *White II* court expressly rejected the view that whenever a statute addresses two distinct legislative concerns, the legislature has created two different crimes and, therefore, has created two statutory provisions for merger purposes. The court explained that that view "is incorrect for two reasons":

> "First, * * * the appropriate inquiry is whether the legislature intended to create a single crime or two crimes; the fact that a statute addresses two legislative concerns may be a useful guide when analyzing the legislature's intent, but it is not dispositive. Second, every statutory section that 'requires proof of an element that the others do not,'

---

"(H) A liquor enforcement inspector.

"(b) The defendant was confined in a state, county or municipal penal or correctional facility or was otherwise in custody when the murder occurred.

"(c) The defendant committed murder by means of an explosive as defined in ORS 164.055.

"(d) Notwithstanding ORS 163.115 (1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115 (1)(b).

"(e) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime.

"(f) The murder was committed after the defendant had escaped from a state, county or municipal penal or correctional facility and before the defendant had been returned to the custody of the facility."

ORS 161.067(1), necessarily involves a distinct legislative concern—otherwise there would be no need for the additional element. And, we know from [*State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989)] and *Barrett*, 331 Or at 32, that whether an additional element must be proved and whether there are 'two or more statutory provisions' are separate inquiries under ORS 161.067(1). *As a result, we cannot focus solely on the fact that the legislature may have had separate reasons for enacting each section of a statute. Instead, we view the statute as a whole, looking to the text, context, and, when appropriate, legislative history of the statute. That analysis includes consideration of whether the sections, although addressing different concerns, also may address, on a more general level, one unified legislative objective.*"

*White II*, 346 Or at 283-84 (emphasis added).

Given the requirement to "view the statute as a whole, looking to the text, context, and when appropriate, legislative history of the statute," *id.* at 283, the *White II* court criticized our decision in *White I*, stating that our analysis

"focused too narrowly on the Commentary's distinctions between the two ways in which a third-degree robbery could be elevated to second-degree robbery. The Commentary, of course, was intended to explain the origins of the various provisions of the revised criminal code, the elements of each crime, and the distinctions between different crimes. In this case, the Commentary usefully describes the legislative intent behind the two different 'aggravating factors' in ORS 164.405(1). *However, the Commentary sheds no particular light on whether the legislature intended that statute 'to define a single crime or two separate crimes.'*"

*Id.* at 289 (quoting *White*, 341 Or at 638-39) (emphasis added).

According to the *White II* court, as a result of our narrow focus, we "miss[ed] the more general thrust of the [robbery] statutory scheme." *Id.* In the court's view, the general thrust of the scheme was that the legislature had "distinguish[ed] between the different degrees of robbery, creating an ascending scale of *different* degrees of one crime, each of which it classified as a different level of felony and

enacted as a different statute." *Id.* at 289 n 13 (emphasis in original).

Having identified the appropriate analysis, the *White II* court applied that analysis to the second-degree robbery statute before it. The court looked first to the text and context of the statute, noting that

"ORS 164.405 is one of three statutes that, together, make up the statutory scheme respecting robbery. *In those statutes, the legislature has provided an incrementally graded set of standards for determining the seriousness of different forms of robbery and has divided those standards into three groups—third-degree robbery, second-degree robbery, and first-degree robbery.* Third-degree robbery is the least serious and describes the basic crime of robbery: taking or attempting to take property from another, while preventing or overcoming the victim's resistance to giving up the property by using or threatening to use physical force. ORS 164.395. *The crimes of second- and first-degree robbery then use third-degree robbery as a foundation and build on its elements by identifying additional elements that, if present, make the crime a more serious one.*"

*Id.* at 285-86 (footnote omitted; emphases added).

The court then turned to the legislative history of the robbery statutes. In doing so, the court looked to the Commentary and found it helpful that the paragraphs were described as "'aggravating factors.'" *Id.* at 289 (quoting Commentary § 150 at 154).

The robbery statutory scheme and legislative history suggested to the court that the different degrees of robbery reflect the legislature's assessment of the seriousness of different types of robberies; that is, they "reflect the legislature's judgment regarding the aggravating elements that elevate third-degree robbery to second- or first-degree robbery." *Id.* at 290. The court concluded that "the legislature created a single crime of second-degree robbery" and that "[t]he fact that the alternative circumstances that elevate third-degree robbery * * * appear in two different paragraphs in ORS 164.405(1) does not make them (or the crime of second-degree robbery) 'two * * * statutory provisions'" for the purposes of ORS 161.067(1). *Id.* at 291. Therefore, the

court held, ORS 161.067(1) did not preclude merger of the defendant's two guilty verdicts for second-degree robbery, even though the verdicts were for conduct that violated two different paragraphs of the second-degree robbery statute.

Following *White II*, in *Parkins*, the court applied a similar analysis to two subparagraphs of the sexual abuse in the first degree statute, ORS 163.427(1)(a)(A) and (B), to determine whether the subparagraphs were separate statutory provisions for the purposes of ORS 161.067(1). 346 Or at 350-55. ORS 163.427 provides, in part:

"(1)   A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact and:

"(A)   The victim is less than 14 years of age;

"(B)   The victim is subjected to forcible compulsion by the actor; or

"(C)   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless."

The defendant argued that the subparagraphs were not separate statutory provisions, but rather identified different legal theories for proving the single crime of first-degree sexual abuse. *Parkins*, 346 Or at 335. As in *White II*, the court looked at the text, context, and legislative history of the statute. After reviewing the legislative history, the court concluded that the legislature "intended to create a basic offense—second-degree sexual abuse—and that the basic offense could be raised to first-degree" if the circumstances described in the subparagraphs were present. *Id.* at 352 (citing Commentary § 116 at 122-23). The court also compared the first-degree sexual abuse statute to ORS 163.095, the aggravated murder statute at issue in *Barrett*, and concluded that, like the paragraphs in the aggravated murder statute, the subparagraphs of the first-degree sexual abuse statute "constitute no more than different theories under which the 'basic offense' *** becomes the more serious offense ***." *Parkins*, 346 Or at 353. Given the text, context, and legislative history of the first-degree sexual abuse statute, the

court held that the subparagraphs are not separate provisions for the purposes of ORS 161.067(1). *Id.* at 355.

In sum, in *White II*, the Supreme Court relied upon the text, context, and legislative history of the robbery statutes to conclude that the "aggravating elements" listed in different paragraphs in the second-degree robbery statute were not separate statutory provisions for the purposes of ORS 161.067(1). 346 Or at 290-91. Likewise, in *Parkins*, the court applied the same analysis and concluded that the "elevating elements" were not separate statutory provisions. 346 Or at 355. Accordingly, in this case, we must examine the text, context, and legislative history of the theft statutes to determine if ORS 164.055(1)(a) and (d) are separate statutory provisions.

We first look to the text and context of the first-degree theft statute. As set out above, ORS 164.055 provides, in part:

"(1) A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $1,000 or more;

"(b) The theft is committed during a riot, fire, explosion, catastrophe or other emergency in an area affected by the riot, fire, explosion, catastrophe or other emergency;

"(c) The theft is theft by receiving committed by buying, selling, borrowing or lending on the security of the property;

"(d) The subject of the theft is a firearm or explosive;

"(e) The subject of the theft is a livestock animal, a companion animal or a wild animal removed from habitat or born of a wild animal removed from habitat, pursuant to ORS 497.308(2)(c); or

"(f) The subject of the theft is a precursor substance.

"* * * * *

"(3) Theft in the first degree is a Class C felony."

As is apparent from its text, ORS 164.055 defines a single crime: first-degree theft. Subsection (1) of ORS 164.055 lists six ways in which a person may commit the crime. That subsection requires that, at a minimum, a person must commit theft as defined in ORS 164.015, and then lists the six alternative ways that the theft can be elevated to first-degree theft in six separate paragraphs. As for its context, ORS 164.055 is part of an incrementally graded scheme of related theft statutes. *See* ORS 164.043 (theft in the third degree); ORS 164.045 (theft in the second degree).

Thus, as is apparent from the text and statutory context of ORS 164.055, the paragraphs at issue here—ORS 164.055(1)(a) and (d)—are parts of a single statute, that defines one degree of theft, which is punishable as a particular class of felony. *Cf. Crotsley*, 308 Or at 279-80 (concluding that the court did not err in refusing to merge convictions for third-degree rape and first-degree rape or convictions for third-degree sodomy and first-degree sodomy). The text and context of ORS 164.055 suggest that, like the statutes at issue in *Barrett, White II,* and *Parkins,* ORS 164.055(1)(a) and (d) "constitute no more than different theories under which the 'basic offense' * * * becomes the more serious offense * * *." *Parkins*, 346 Or at 353.

The legislative history of the theft statutes supports that conclusion. Like the second-degree robbery statute in *White II* and the first-degree sexual abuse statute in *Parkins,* the first-degree theft statute at issue here was enacted as part of the 1971 Oregon Criminal Code. Prior to the enactment of the code, there had been several independent theft statutes. To simplify matters, the Criminal Law Revision Commission (Commission) drafted a broad definition of theft, found in Article 14, section 123, and codified at ORS 164.015. *See* Tape Recording, Senate Committee on Criminal Law and Procedure, SB 40, Mar 2, 1971, Tape 4, Side 1 (statement of Donald Paillette). The Commission's goal was to define a single crime that could be committed in a variety of ways. The new definition of theft incorporated not only theft by taking, but also theft of lost or mislaid property, theft by extortion, theft by deception, and theft by receiving. *Id.*; *see also* Commentary § 123 at 132.

After the Commission incorporated the different types of theft into a single definition, the Commission's Subcommittee on Grading and Sentencing (Subcommittee) was tasked with determining a scheme of punishment "with the intention that the penalty section would become a part of the basic section on theft and there would not be a different [penalty] section on theft by deception, theft by extortion, or theft by receiving so far as the dollar amount was concerned * * *." Minutes, Criminal Law Revision Commission, Subcommittee on Grading and Sentencing, Apr 5, 1970, 46. The Subcommittee settled upon a grading of the offense of theft into the classifications of a Class C felony for property stolen with a value of $250 or more and a Class A misdemeanor for property stolen with a value of less than $250. *Id.* at 48. The only other distinction drawn by the Subcommittee was for theft by extortion, which was classified as a Class B felony. *Id.* Eventually, instead of including the penalty provisions in the basic definition of theft, found in section 123, the Commission set out the penalty provisions in separate statutory sections labeled "Theft in the first degree" and "Theft in the second degree." *See* Commentary §§ 124-25 at 132-33.

The Commentary reiterated that the purpose of the element regarding the value of the property stolen in the Commission's proposed second-degree and first-degree theft statutes was to establish a "criterion for determining the penalty for the crime." *Id.* at §§ 124-25, 133. The paragraph relating to the value of the property stolen listed under each degree of theft in the statutes served "as the basis for distinguishing between a misdemeanor and a felony." *Id.* Thus, the Commentary suggests that the Commission intended to set out the basic elements of theft in section 123, and that, once those basic elements had been proved, the offense could be categorized for punishment purposes depending on proof of an additional element relating to the value of the stolen property.

The Commission's proposed first-degree theft statute was amended by the Senate Criminal Law and Procedure Committee (Senate committee) to expand the conduct that would be punishable by a felony. Among other

things, the Senate committee reduced the threshold amount for a felony and added language so that a theft would be a first-degree theft if the total value of property taken in an aggregate transaction was more than the threshold amount. Minutes, Senate Criminal Law and Procedure Committee, Mar 5, 1971, 9-12. It also added paragraphs relating to theft during a riot and theft by receiving.

The aggregation concept addressed a legislative concern for items stolen as part of a common scheme over a longer period of time. Aggregation made it more likely that professional thieves, serial shoplifters, and retail employees who stole small amounts of property over time would be subject to elevated punishment as felons. *See* Tape Recording, Senate Criminal Law and Procedure Committee, SB 40, Mar 2, 1971, Tape 4, Side 1 (statement of John Christman). The paragraph relating to thefts that occur during a riot sought to address the problem of looting during instances of mass disturbance and major catastrophe. *Id.* (statement of Richard Barton). In response to looting that apparently followed an earthquake in Los Angeles and other public unrest in Portland during the summer of 1970, the legislature deemed it appropriate to subject looters to elevated punishment as felons. *Id.* Finally, the paragraph relating to theft by receiving sought to ensure that no value requirement attached to the kinds of theft by receiving commonly practiced by "professional fences." *Id.* The goal was to make "professional fences" also more easily subject to punishment as felons. *Id.*

In the House Judiciary Committee, a number of additional amendments were proposed and considered, including an amendment that added theft of a firearm to the first-degree theft provision, which was approved. *See* Tape Recording, House Judiciary Committee, SB 40, May 17, 1971, Tape 32, Side 2 (discussion of amendments submitted by Richard Goffena).

Thus, the legislative history of the theft statutes establishes that the legislature intended to create a single crime of theft, which it later divided into different degrees for the purposes of classification and punishment. The legislature sought to classify certain thefts as felonies because it

regarded them as more serious than other thefts. Because, as the legislative history shows, the elements that transform the basic crime of theft into first-degree theft are "criteri[a] for determining the penalty for the crime[,]" they are akin to the elements at issue in *Barrett*, *White II*, and *Parkins*. They merely set out particular circumstances surrounding theft that warrant elevated punishment; they do not to create separate crimes and, therefore, do not constitute separate statutory provisions for the purposes of ORS 161.067(1).

The state argues that, because ORS 164.055(1)(a) and (d) address different legislative concerns, they constitute separate statutory provisions. In doing so, the state makes the same analytical error we made in *White I*, which the Supreme Court criticized in *White II*. *See* 268 Or App at 566-67. Specifically, the state focuses too narrowly on the fact that the paragraphs describe different types of thefts and, therefore, can be said—at some level—to address different legislative concerns. But, as the Supreme Court said in *White II*, the view that whenever a statute's sections, paragraphs, or subparagraphs address different legislative concerns they constitute separate statutory provisions "is incorrect[.]" 346 Or at 283. As we erroneously did in *White I*, the state's argument in this case "gives insufficient weight to the fact that the legislature did, in fact, distinguish between the different degrees" of theft, "creating an ascending scale of *different* degrees of one crime, each of which it classified as a different level" and "enacted as a different statute." *Id.* at 289 n 13 (emphasis in original). Although ORS 164.055(1)(a) and (d) address different legislative concerns at one level, they share a common purpose: to elevate a basic crime to a higher level crime for punishment purposes. Thus, contrary to the state's argument, the paragraphs have a general, unifying theme.

The result that would follow from the state's argument is that, if a defendant commits theft of a firearm worth more than $1,000, the defendant can be found guilty of two counts of first-degree theft and the verdicts will not merge; in other words, for that one act, the defendant can receive two convictions. Or, if a defendant commits theft by receiving of a firearm worth more than $1,000 during a riot,

the defendant can receive four convictions for that one act (because his conduct would violate ORS 164.055(1)(a), (b), (c) and (d)). The text, context, and legislative history, considered together, do not support such a result.

As a final matter, we note that our conclusion is consistent with Justice Kistler's concurrence in *White II*. After examining the legislative intent of the term "statutory provision" in ORS 161.067, the concurrence concluded that, under the anti-merger statute, "each crime identified as such in the criminal code constitutes a separate statutory provision and the fact that there are alternative means of committing those crimes does not make each alternative means a separate provision within the meaning of ORS 161.067(1)." *White II*, 346 Or at 292-93 (Kistler, J., concurring). In support of its interpretation of "statutory provision," the concurrence relied on the text and context of ORS 161.067, as well as its legislative history.

In its analysis of the statute's text, the concurrence relied, in part, upon an exception in ORS 161.067(3) to reach its conclusion regarding the meaning of "statutory provision." *Id.* at 293-94. ORS 161.067(3) provides:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

As the *White II* concurrence explained, the exception suggests that ORS 163.408 (second-degree unlawful sexual penetration) and ORS 163.411 (first-degree unlawful sexual penetration) are each statutory provisions and that a general

rule exists that when there are alternative methods of committing each of those crimes, the methods are not separate statutory provisions. *White II*, 346 Or at 294 (Kistler, J., concurring). "Were the general rule otherwise, there would have been no need to add a caveat to ORS 161.067(3) and state that each method of committing unlawful sexual penetration 'shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations.'" *Id.* Expanding upon that general rule, the concurrence in *White II* also concluded that "when the legislature creates two crimes with different degrees of seriousness * * *, each statutorily designated degree of a crime is a separate statutory provision." *Id.* at 295.

The concurrence also relied upon two cases which preceded the first enactment of ORS 161.067 in 1985, *State v. Woolard*, 259 Or 232, 484 P2d 314, *on reh'g*, 485 P2d 1194 (1971), and *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979), to provide additional context regarding the meaning of "statutory provision." *White II*, 346 Or at 296 (Kistler, J., concurring). In those cases the court held that "a defendant who committed burglary and theft (when theft was the intended crime on entry into the house) could be punished for only one offense." *Id.* The holding in those cases appeared contrary to the rule, set forth in ORS 161.067, that when the same conduct or criminal episode violated two or more statutory provisions, there were as many separately punishable offenses as there were statutory violations, but, as the concurrence in *White II* explained, the 1985 statute preserved those holdings with the following exception:

> "However, when one of the statutory provisions violated is burglary in any degree, and the other statutory provision violated is theft or criminal mischief in any degree, and the theft or criminal mischief was pleaded as the intended crime of the burglary, the burglary and the theft or criminal mischief shall constitute only one punishable offense."

*Id.* at 297 (internal citation omitted; emphases added). While a ballot initiative that reenacted ORS 167.067 in 1986 did not include the exception, "the exception makes clear that the 1985 legislature understood that each degree of burglary, theft, and criminal mischief constituted a separate

statutory provision, in much the same way that the exception to ORS 161.067(3) makes that same understanding clear." *Id.* In other words, when the 1985 legislature drafted ORS 167.067, it specifically understood ORS 164.055 to constitute a single statutory provision.

Lastly, the concurrence in *White II* identified *Blockburger v. United States*, 284 US 299, 52 S Ct 180, 76 L Ed 306 (1932), as the apparent source of what is now ORS 161.067(1) based upon the testimony from a spokesperson for the Oregon District Attorney's Association to the 1985 legislature. *White II*, 346 Or at 298 (Kistler, J., concurring). As the United States Supreme Court used the phrase "statutory provision" in *Blockburger*, "that phrase means nothing more or less than what the legislature has defined as a crime." *White II*, 346 Or at 298 (Kistler, J., concurring) (citing *Blockburger*, 284 US at 304). The meaning of "statutory provision" is simply that, "[w]hen the legislature makes it a crime to commit certain acts, each statutorily defined crime is a separate statutory provision, and each degree of that crime is a statutory provision." *Id.* at 299. Applying that meaning to the present case, it is clear that first-degree theft would be considered a single statutory provision, and that the alternative ways to commit the crime set out in ORS 164.055(1)(a) and (d) do not constitute separate statutory provisions.

In sum, we conclude that under *Barrett*, *White II*, and *Parkins*, as well as under the alternative analysis posited by the concurrence in *White II*, ORS 164.055(1)(a) and (d) are not separate statutory provisions for merger purposes. Accordingly, the trial court erred in failing to merge the two guilty verdicts on the first-degree theft counts into a single conviction.

Reversed and remanded with instructions to merge defendant's convictions for first-degree theft and for resentencing; otherwise affirmed.